523 So.2d 251 (1988)
STATE of Louisiana, Appellee,
v.
Larry J. JACKSON, Appellant.
No. 19330-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Rehearing Denied March 24, 1988.
*255 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, John Blake, Dist. Atty., George H. Meadors, Asst. Dist. Atty., Jonesboro, for appellee.
Before HALL, C.J., and JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Larry J. Jackson, age 18, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. The defendant was tried by jury and found guilty as charged. He was sentenced to serve thirty-five years at hard labor without benefit of parole, probation or suspension of sentence. The defendant has appealed his conviction and sentence based upon numerous assignments of error. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
On April 30, 1986, the defendant and an accomplice, Clint D. Smith, entered a general store a rural community of Claiborne Parish. The defendant and Smith purchased a can of tobacco from the elderly storekeeper, Will Ross Henry. The pair decided not to keep the tobacco, returned it, and then left. Later that day, the defendant and Smith returned to the store and inquired about purchasing some hardware. Smith then grabbed the storekeeper, Mr. Ross, from behind and the defendant struck him on the head with a metal object causing serious injury.[1] The defendant and Smith then bound and gagged Mr. Ross with duct tape. They took approximately $285 from Mr. Ross' wallet, as well as the money in the cash register. They also took money and food stamps from a cigar box under the store counter. The total amount taken in the robbery was approximately $600.
The defendant and Smith then left the scene in Smith's car. The pair stopped for gasoline at another nearby general store and then drove the vehicle to Gibsland, Louisiana where it was abandoned. Along the way, the defendant threw the weapon from the car onto the roadside. The weapon was never recovered.
The defendant's cousin took the pair from Gibsland to Smith's home. The defendant and his cousin then checked into a local motel with their girlfriends where they spent the night. The defendant paid for the motel room from the proceeds of the robbery. He also gave his cousin some of the stolen money to hold for him. This money was later turned over to law enforcement officials.
The next day, May 1, 1986, the defendant's mother, who had apparently learned of the defendant's involvement in the robbery, brought him to the local sheriff's office. There, the defendant gave an oral statement and a video taped statement admitting the robbery and implicating Smith as the instigator of the crime. The defendant was then arrested. On May 7, 1987, the defendant gave to law enforcement officials another statement concerning the crime. This statement was tape recorded and transcribed.
Smith was later apprehended and entered a plea of guilty to armed robbery pursuant to a plea agreement whereby his sentencing exposure was limited to ten to twenty-five years at hard labor without benefit of parole, probation or suspension of sentence. Smith was sentenced to serve twenty years at hard labor without benefit of parole, probation or suspension of sentence. His conviction and sentence were affirmed by this court. State v. Smith, 513 So.2d 436 (La.App. 2d Cir.1987).
The defendant was charged with armed robbery, tried by jury and found guilty as charged. The trial court sentenced the defendant to serve thirty-five years at hard *256 labor without benefit of parole, probation or suspension of sentence. He now appeals his conviction and sentence, urging numerous assignments of error. We find the assignments of error to have no merit.

NOTICE OF INTENT TO USE STATEMENT
In assignment of error one, the defendant argues the trial court erred in ruling that the state provided the defendant with sufficient notice under LSA-C.Cr.P. Art. 768 of its intent to introduce the defendant's video taped statement. The defendant argues that he was not allowed to view the statement far enough in advance of trial to prepare a defense. He also argues that the written notice given by the state did not spell out the nature of the statement as required by LSA-C.Cr.P. Art. 768. This assignment of error is meritless.
LSA-C.Cr.P. Art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
Notice of the existence of a confession or an inculpatory statement is required to avoid unfair surprise and to allow the defendant adequate time for preparation of a defense. State v. Jackson, 450 So.2d 621 (La.1984); State v. Russell, 416 So.2d 1283 (La.1982), cert. denied 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982); State v. Brown, 480 So.2d 948 (La.App. 2d Cir.1985); State v. Foster, 437 So.2d 309 (La.App. 2d Cir.1983).
In compliance with LSA-C.Cr.P. Art. 768, on February 17, 1987, prior to the commencement of the defendant's trial, the state furnished to the defendant written notice of its intent to use four inculpatory statements or confessions made by the defendant, including the statement which was video taped on May 1, 1986. The record reflects that defendant's counsel was made aware of the existence of the video taped statement at approximately 10:00 p.m. on February 16, 1986, the evening before the trial, and that defense counsel viewed the video tape the following morning before the trial began. The record also reflects that the prosecutor handling the case informed defense counsel of the existence of the video taped statement in a timely fashion after he became aware of its existence.[2]
The defendant claims that although he was allowed to view the video taped statement prior to trial, nevertheless, there was insufficient time to prepare a defense. He also complains that the written notice did not spell out the nature of the statements as required by LSA-C.Cr.P. Art. 768. These arguments are meritless.
After examination of the record, we find no flaw in the notice given by the state, nor prejudice to the defendant, caused by the state's actions. The notice given by the state adequately complied with the requirements of LSA-C.Cr.P. Art. 768. That provision does not require disclosure of the content of the statement, only its existence. State v. Mitchell, 437 So.2d 264 (La.1983). The notice must also name the parties to the statement and the place and date the statement was made. The state's notice provided such information.
In addition, defense counsel was aware of the content of the video taped statement prior to trial. No motion for continuance was made. The defendant had also made other statements concerning this crime which contained essentially the same information. Therefore, any claim by the defendant that he was surprised by this *257 statement, or that preparation of his defense was thwarted by this statement, is unfounded.

RIGHTS FORM AND VIDEO STATEMENT
In assignments of error two and three, the defendant argues the trial court erred in admitting into evidence the video taped statement when the advice of rights form connected with this statement was not made available to the defendant in response to his motion for a bill of particulars and was not shown to him until it was offered in evidence at trial.
The record before us does not show that the defendant ever filed a motion for bill of particulars. Had such a motion been filed, the advice of rights form would not have been pertinent to that motion. The advice of rights form complained of in these assignments of error contains no information bearing upon the specifics of the crime charged and relates only to the question of whether the defendant was fully informed of his rights prior to giving the video taped statement.
However, the record shows that the defendant did file a motion for inspection and discovery. In response to the discovery motion, the written and transcribed confession of the defendant given on May 7, 1986 was furnished to defense counsel, along with an advice of rights form signed by the defendant. The evidence shows that when the defendant's video taped confession was made, he also signed a rights form. Prior to trial, defense counsel viewed the video taped confession which contained a waiver of the defendant's Miranda rights. Although the written waiver of rights form which was signed by the defendant prior to the video taped confession was not initially furnished to defense counsel, defense counsel was aware of the waiver of the defendant's Miranda rights prior to trial. We find that the defendant was not prejudiced by the state's failure to furnish this particular advice of rights form. The defendant has failed to demonstrate any prejudice resulting from the introduction of this form into evidence.

CROSS-EXAMINATION OF LAW ENFORCEMENT OFFICIALS REGARDING ABSENCE OF COUNSEL DURING INTERVIEW OF THE DEFENDANT
In assignments of error four, seven and eight the defendant objects to the rulings by the trial court which sustained the state's objections to defense counsel's cross-examination of a law enforcement officer regarding the officer's opinion of the effect of the absence of counsel during the video taped interview of the defendant.
The record reflects that when the video taped confession was made, the defendant was not represented by counsel, nor had the court appointed an attorney to represent him. However, the defendant was fully advised of his Miranda rights, including the right to counsel, and he freely and voluntarily waived those rights.
While cross-examining the officer about the advice of rights form, defense counsel asked him, "You are aware, were you not, Mr. Pepper, that had an attorney been appointed to represent him at that point, any attorney that had been appointed to represent him would have told him not to make a statement?"
Later, defense counsel asked the officer, "You have never known an attorney to advise a client to confess unless some deal was worked out, have you?"
Still later, defense counsel asked the law enforcement officer, "Would you make a confession without talking to an attorney?"
The defendant argues that the officer knew that if the defendant had been represented by counsel, the attorney would instruct the defendant not to make a statement, but that the officer took advantage of the defendant by questioning him prior to his consultation with an attorney. These arguments are meritless.
The state objected to the questions posed by defendant's counsel and in brief argues that the questions call for opinion testimony not within the scope of the law enforcement officer's personal knowledge. Further, the state argues that even though *258 this was an experienced law enforcement officer, he was not offered nor accepted as an expert and therefore should not be permitted to testify as to opinions and impressions he held.
We believe the state's position is correct. The defendant sought to obtain "an impermissible impression or opinion of a witness not shown to have special knowledge in the field." LSA-R.S. 15:463-466; State v. Shea, 421 So.2d 200 (La.1982), reversed on other grounds, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985); State v. Sterling, 453 So.2d 625 (La.App. 1st Cir. 1984).
The defendant erroneously argues that before he made his statements and confessions, an attorney had been appointed to represent him, and the attorney was not notified of any proposed interview. However, as noted above, no attorney had been appointed to represent the defendant at the time the defendant's statements were made. The defendant was fully informed, not only of the charge against him, but also of his Miranda rights, and his right to counsel. The record also shows that the defendant made a knowing and intelligent waiver of those rights, including the right to have counsel present during the interview. Therefore, he cannot now be heard to complain, upon the showing made in this record, that he was denied his right to counsel.

ADMISSIBILITY OF VIDEO TAPED STATEMENT
In assignment of error five, the defendant argues that the video taped statement was not admissible because the defendant was not fully advised of the reasons for his detention, and because the defendant did not have an attorney present at the time the statement was made. These arguments are without merit.
LSA-C.Cr.P. Art. 218.1 provides that when any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reasons for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to assistance of counsel and, if indigent, his right to court appointed counsel.
The defendant objects that he was not fully advised of the reason for his detention prior to giving the video taped statement. He claims that the officer who questioned him read to him only the penalty provision for armed robbery and not the definition of that crime.
The defendant's argument that he was not fully informed is not supported by the record. The officer who questioned the defendant specifically informed him that he was being questioned concerning the armed robbery of Mr. Will Ross Henry. The defendant was fully informed of his rights as is evidenced by the testimony of the officers and the advice of rights form signed by the defendant.
There is no requirement that a defendant be read the technical definition of a crime in order to be fully advised of the reason for his arrest or detention. The record in this case shows that the defendant was made amply aware of the reasons for the questioning. He was advised of the crime which was under investigation and the name of the victim of that crime. Therefore, the defendant's attack on the admissibility of the statement for this reason is unfounded.
The defendant again complains that the statement was not admissible because he made the statement without the advice of counsel. As stated above, the record shows that the defendant had been brought to the Sheriff's office by his mother and he gave an oral statement and a video taped statement prior to his formal arrest. The defendant was advised before questioning of his right to counsel. He freely and voluntarily waived that right prior to making a statement. The defendant had every right to make such a waiver. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Jordan v. Watkins, 681 F.2d 1067 (5th Cir.1982). We conclude that the defendant's argument that he was deprived of his right to counsel is unfounded.

*259 QUESTIONS REGARDING LACK OF COUNSEL
In assignments of error six, eleven, thirteen and eighteen, the defendant contends that he should have been allowed to cross examine the investigating officers about whether they knew that the Louisiana Supreme Court had stated that the practice of interviewing a defendant without the presence of counsel is undesirable. These assignments of error are without merit.
At the time the defendant gave his video taped statement, he was not represented by an attorney. However, he was informed of his right to counsel and he waived that right. The questions posed by defense counsel were not relevant and the state's objections to the questions were properly sustained by the trial court. LSA-R.S. 15:441. We note, however, that the officer actually answered the question, "No, sir." The defendant was not prejudiced by the trial court's ruling.

VOLUNTARINESS OF VIDEO TAPED STATEMENT
In assignments of error nine and twelve, the defendant argues the video taped statement was inadmissible, claiming that it was not freely and voluntarily given. The defendant claims the statement was induced by promises from the interrogating officers that if he confessed, the district attorney would be informed and the defendant would receive favorable treatment. The defendant argues that this inducement vitiated the voluntariness of his statement. This argument is meritless.
LSA-R.S. 15:451 provides:
Before what purposes [purports] to be a confession can be introduced into evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
The defendant cites jurisprudence to the effect that any direct or implied promise used to obtain a confession may render the confession involuntary. State v. Hall, 434 So.2d 517 (La.App. 2d Cir.1983); State v. Welch, 448 So.2d 705 (La.App. 1st Cir. 1984); writ denied 450 So.2d 952 (La.1984).
The state has the burden of proof to show that an accused knowingly and intelligently waived his rights and the voluntariness of a confession must be shown beyond a reasonable doubt. State in Interest of Dino, 359 So.2d 586 (La.1978), cert. denied 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); State v. Neslo, 433 So.2d 73 (La.1983).
Promises of immunity from prosecution, clemency or leniency, inducements and implied promises will void a defendant's confession. State v. Serrato, 424 So. 2d 214 (La.1982); State v. Jackson, 414 So.2d 310 (La.1982).
However, a mild exortation to tell the truth or telling a defendant that if he cooperates the officer will do what he can to help or that "things will go easier" for the defendant will not negate the voluntariness of a confession. State v. Hall, 434 So.2d 517 (La.App. 2d Cir.1983); State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984); State v. Petterway, 403 So.2d 1157 (La. 1981); State v. Dison, 396 So.2d 1254 (La. 1981); State v. Sterling, supra. Further, advising a defendant that the district attorney will be advised of any cooperation is not sufficient inducement to overcome the free and voluntary nature of a confession. State v. Vernon, 385 So.2d 200 (La.1980).
The record does not indicate, as the defendant argues, that the defendant was improperly induced to make a statement. The record shows that the law enforcement officer who obtained the defendant's statement on May 1, 1986 told the defendant that he could not promise him anything, but that if he did cooperate, his cooperation would be made known to the district attorney's office. This comment by the officer did not destroy the voluntary nature of the confession. State v. Vernon, supra.
After thorough questioning of the witnesses, the trial court ruled that the officer's comments did not vitiate the voluntariness of the confession. Such rulings by a trial court are not to be disturbed unless *260 they are not supported by the evidence. State v. Graham, 486 So.2d 1139 (La.App. 2d Cir.1986); State v. Burkhalter, 428 So. 2d 449 (La.1983); State v. Williams, 420 So.2d 1116 (La.1982); State v. Jackson, 414 So.2d 310 (La.1982); State v. Gaskin, 412 So.2d 1007 (La.1982). The record supports the trial court finding that the statement was freely and voluntarily given and was therefore admissible.

FOUNDATION FOR ADMISSIBILITY OF VIDEO TAPED STATEMENT
In assignment of error ten, the defendant objects that the video statement should have been excluded from evidence because the statement was not used in its entirety due to the poor sound quality. The defendant also complains that the interrogating officer asked leading questions. Finally, the defendant argues that the state failed to lay the proper foundation for the admission of the video tape. These arguments are meritless.
The defendant bases his argument that the statement was not used in its entirety upon LSA-R.S. 15:450, which provides:
Every confession, admission or declaration sought to be used against anyone must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
This article is inapplicable to the defendant's argument. The article is aimed at the editing of confessions or admissions. In the present case, the video statement was not edited in any way. However, the defendant claims the statement was not used in its entirety because of the poor quality of the sound.
Although the sound was not of the best quality, as the trial court noted, the import of the confession was clear and the video taped statement was presented to the jury in its entirety. The determination regarding the audibility of the tapes rests within the trial judge's sound discretion. State v. Hennigan, 404 So.2d 222 (La. 1981). In this case, there is no showing that the trial court abused its discretion in admitting into evidence this video taped statement.
The defendant also objects to leading questions posed by the interrogating officer. A confession need not be the spontaneous act of the accused and may be obtained by means of questions and answers. LSA-R.S. 15:453. Our review of the statement reveals that although the officer posed some leading questions, the defendant supplied the specifics of the crime in his own words. Also, although the sound quality of the tape was poor, the defendant's statements were audible.
The defendant next argues that the state failed to lay a proper foundation for the admission into evidence of the video taped statement. This argument is also meritless.
The defendant contends that in order to admit the statement into evidence, the state was required to show the factors enumerated in U.S. v. Starks, 515 F.2d 112 (3rd Cir.1975), which outlined federal requirements to establish a foundation for the admission of a sound recording.[3] The defendant claims the requirements of U.S. v. Starks were cited with approval in State *261 v. Hennigan, supra. However, the Louisiana Supreme Court did not expressly adopt the Starks criteria, but referred to those criteria in a footnote in its opinion. The ultimate determination of the authenticity, audibility and clarity of the video tape recording rests within the sound discretion of the trial judge.
In the instant case, the state established the authenticity and correctness of the video tape recording. The audibility of the tape was sufficient to allow its admission into evidence in order for the jury to give the tape the weight the jurors believed it deserved. The identity of the persons present in the room was established and the trial court determined that the statement was made freely and voluntarily. A proper foundation was laid for the admissibility of the video taped statement. We find no abuse of the trial court's discretion in allowing the presentation of the video tape to the jury.
The defendant's argument is without merit.

MISTRIAL BASED UPON WITNESS' STATEMENT
In assignment of error fourteen, the defendant argues the trial court erred in refusing to grant a mistrial when a witness, Deputy Steve Williams, testified that the defendant admitted his participation in the armed robbery prior to making the video taped statement. The defendant argues he was not given notice as required by LSA-C.C.P. Art. 768 of the state's intent to introduce this statement and that under LSA-C.Cr.P. Art. 775, the prejudice resulting to him by this statement warranted a mistrial. This assignment of error is without merit.
The testimony concerning this statement was somewhat unresponsive to the state's line of questioning which was designed to establish the chronology surrounding the defendant's giving of the video taped statement. This oral statement was made just prior to the taking of the video taped confession which we have already determined was admissible in evidence. The state's notice under LSA-C.Cr. P. Art. 768 was given to the defendant on February 17, 1987 and lists four inculpatory statements and/or confessions. Among these is the oral statement made to law enforcement officers on May 1, 1986. This notice was sufficient to comply with the requirements of LSA-C.Cr.P. Art. 768. In light of the defendant's written and recorded confession and his video taped confessions which were properly admitted in evidence, the record does not show that the defendant was surprised by the officers' reference to the oral statement or that he was prejudiced thereby.
A mistrial is a drastic remedy which, unless mandatory, is submitted to the discretion of the trial court. The court must use discretion to determine if substantial prejudice has resulted which would deprive the defendant of a fair trial. Trial court rulings on such matters are not to be disturbed absent a showing of abuse of discretion. State v. Narcisse, 426 So.2d 118 (La. 1983). In the present case, the trial court did not abuse its discretion in denying the defendant's motion for mistrial.

LIMITED TESTIMONY
In assignments of error fifteen and sixteen, the defendant contends that the trial court erred in refusing to allow the defendant and his mother to take the stand before the jury for the limited purpose of testifying regarding the voluntariness of the video taped statement, without being subject to cross examination on the case as a whole. These assignments of error are meritless.
In State v. Lovett, 345 So.2d 1139 (La. 1977), the Louisiana Supreme Court held that a defendant would be allowed to take the stand in the presence of the jury for the limited purpose of testifying about the circumstances surrounding the giving of his confession, without being subject to cross examination on the whole case. However, Lovett was legislatively overruled by LSA-C.Cr.P. Art. 703(B). State v. Day, 391 So.2d 1147 (La.1980).
Although LSA-C.Cr.P. Art. 703 was amended in 1980, the import of the 1978 *262 amendment, which was discussed in State v. Day, supra, remains. LSA-C.Cr.P. Art. 703(E) provides:
E. An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. The state may file an answer to the motion. The defendant may testify in support of a motion to suppress without being subject to examination on other matters. The defendant's testimony cannot be used by the state except for the purpose of impeaching the defendant's testimony at the trial on the merits.
If the defendant testifies before the jury at the trial on the merits, he can be cross-examined on the whole case.
Further, LSA-R.S. 15:280 provides that when a witness has been initially sworn and has testified to any single fact in his examination in chief, he may be cross examined upon the whole case.
As noted above, LSA-C.Cr.P. Art. 703(E) provides that at a motion to suppress, a defendant may testify in support of his motion without being subject to examination on other matters. In this case, there was no formal motion to suppress the video taped statement. However, the trial court did conduct a hearing out of the presence of the jury regarding the voluntariness of the statement. The defendant testified at this hearing, as did his mother. Following this hearing, the court ruled that the statement was admissible. Under LSA-C.Cr.P. Art. 703(E), and the pronouncement of the Louisiana Supreme Court in State v. Day, supra, the trial court was correct in ruling that the defendant and his mother could not take the stand before the jury for the limited purpose of testifying regarding the voluntariness of the video taped statement. As the court stated in Day (footnote 2, p. 1150):
2. The Legislature apparently determined that a defendant's right to challenge the admissibility of statements taken from him is adequately protected by allowing him to testify out of the presence of the jury on the facts surrounding the giving of his confession without being subject to cross-examination on the whole case. His right to testify in such manner in connection with the admissibility of the confession is well established in our law. See C.Cr.P. art. 703; State v. Thomas, 208 La. 548, 23 So.2d 212 (1943). Compare Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). (emphasis supplied)
The law clearly provides that if the defendant, or any other witness, takes the stand at the trial on the merits, he may be cross examined on the whole case.
Accordingly, this assignment of error has no merit.

ADVICE OF RIGHTS FORM
In assignment of error seventeen, the defendant argues that the trial court erred in admitting into evidence the advice of rights form executed in connection with the statement given by the defendant on May 7, 1986. The defendant claims the form was not admissible because it did not contain a date upon which it was allegedly signed by the defendant and did not give the exact nature of the charges against the defendant. This assignment of error is without merit.
The advice of rights form clearly specifies that the defendant was being questioned about the armed robbery of Mr. Will Ross Henry. The officer who administered the form signed and dated the form on May 7, 1986, at 2:30 p.m., indicating the defendant had been informed of his constitutional rights prior to questioning. The form is also signed by the defendant and one witness. The officer who advised the defendant of his rights testified that the defendant signed the form within approximately two minutes of the time it was signed by the officer. Basically, the defendant objects to going outside the four corners of the form to establish that the defendant signed the form and to establish the date and time the form was signed. The defendant's argument is unfounded.
The general rule is that a document is admissible if there is evidence *263 sufficient to support the finding that the item in question is what it purports to be. An authentication by circumstantial evidence is also uniformly recognized as permissible. State v. Taylor, 448 So.2d 773 (La.App. 2d Cir.1984).
In the present case, the state offered direct evidence that the defendant did in fact sign the form. There was also direct evidence of the date and time of signing. These factors are sufficient to authenticate the document.
This assignment of error has no merit.

POLLING OF JURY
In assignment of error nineteen, the defendant argues that the trial court erred in refusing to poll the jury regarding the percentage of the defendant's testimony they could hear in the video taped statement. This assignment of error is without merit.
In support of his argument the defendant cites LSA-C.Cr.P. Art. 812 which states the court shall order the clerk to poll the jury if requested by the state or the defendant. However, this article is clearly aimed at verifying jury verdicts and has no application to the present circumstances.
The trial court did not err in denying the defendant's request.

JURY INSTRUCTIONS
The defendant argues in assignment of error twenty that the trial court erred in failing to give the defendant's suggested jury instructions one through four and six through twelve. We find the defendant failed to properly preserve his objection and therefore the issue is not properly before this court for review.
Suggested jury instructions one through four deal with the law on justification for the commission of an offense. Other suggested instructions included the definitions of various non-charged and non-responsive offenses. The defendant also requested that the court instruct the jury regarding police questioning of the defendant without the presence of counsel.
The court declined to give the defendant's requested instructions, finding that some of the instructions were contained in the court's general jury charge, some were inaccurate statements of the law, and some were irrelevant to the evidence presented. The defendant made a general objection to the court's ruling but failed to state any grounds for his objection.
LSA-C.Cr.P. Art. 801 provides that a party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection is made before the jury retires or in such time as the court may reasonably correct the error. The nature of the objection and the grounds therefor shall be stated at the time of the objection. LSA-C.Cr.P. Art. 841 requires contemporaneous objections to court rulings with the specification of the grounds for the objection. A simple objection to the trial court's refusal to give a suggested jury instruction without specification of the grounds for the objection is insufficient. See State v. Jackson, 450 So. 2d 621 (La.1984); State v. Baylis, 388 So.2d 713 (La.1980). In the present case, the defendant has stated no grounds for his objections in the trial court nor has he specified the grounds for his objections in his brief before this court. Therefore, we find these assignments of error to be meritless.

STATE'S REQUESTED JURY INSTRUCTIONS
In assignment of error twenty-one, the defendant argues that the trial court erred in giving one of the state's requested jury instructions. The record reflects that the state sought a jury instruction providing that the use of a dangerous weapon in the commission of an offense may be established by means other than the actual introduction of the weapon into evidence. During the discussion between the court and counsel regarding jury instructions, the trial court indicated it would not give the instruction exactly as submitted by the state, but would include an instruction which the court found to be more accurate.
*264 The record reflects that the trial court simply did not give the disputed instruction to the jury, or an instruction which was similar. Therefore, this assignment of error is not supported by the record and is groundless.

COMMENTS BY THE TRIAL COURT
In assignments of error twenty-two, twenty-three and twenty-four, the defendant objects to two comments made by the trial court its charge to the jury. The defendant claims these comments required the declaration of a mistrial.
First, the defendant objects to the trial court's instructions regarding the definition of "constructive possession" of things taken from the person of another or which are in the immediate control of another during an armed robbery. This comment was made by the trial court while instructing the jury on the definition of armed robbery.
Also, during the jury charge, the trial court instructed the jury that a statement made by defense counsel during closing arguments was incorrect. During his closing argument, defense counsel had argued to the jury that the only offense of which the defendant could be found guilty was armed robbery. The court indicated this was not correct and proceeded to correctly instruct the jury regarding the responsive verdicts that might be returned in the case. LSA-C.Cr.P. Art. 814. The defendant claims he was entitled to a mistrial because the trial court made these additions to the general written jury instructions submitted to both counsel. These assignments of error are without merit.
The defendant first argues that the trial court violated the provisions of LSA-C.Cr.P. Art. 801 which provides that the court shall reduce its jury charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The record contains no indication of such a request in this case. The record also fails to show that the trial court prepared a complete and formal written jury charge. Therefore, the requirement of Art. 801 was not applicable.
Further, the trial court's instruction to the jury regarding constructive possession in connection with the definition of armed robbery was correct and applicable to the facts of this case.
The defendant also claims that the trial court demonstrated bias and expressed an opinion that defense counsel's closing argument was incorrect, all of which is prohibited by LSA-C.Cr.P. Art. 772. Our review of the record does not demonstrate that the trial court's comment represented a prejudicial opinion necessitating a mistrial. Rather, the trial court correctly instructed the jury of the responsive verdicts applicable in this case. The court was required to give such instructions to the jury and failure to do so would constitute reversible error. LSA-C.Cr.P. Art. 803; State v. Ferguson, 358 So.2d 1214 (La.1978); State v. Toomer, 395 So.2d 1320 (La.1981).

ADDITIONAL JURY INSTRUCTIONS
Assignments of error twenty-five and twenty-six are closely related to assignments of error twenty-two, twenty-three and twenty-four. After jury deliberations began, the jury requested the trial court to repeat the instructions on the definitions of the different types of robbery. The court repeated its instructions. After the court gave those additional instructions, the foreman indicated that the jury wanted to again hear the definition of first degree robbery. The trial court complied with the request, and the jury retired to continue its deliberations.
The defendant argues that the trial court again gave an erroneous instruction concerning armed robbery, and again referred to defense counsel's closing argument relating to responsive verdicts. We do not find any error in the trial court's instructions, nor did the court's comment constitute a prejudicial remark. These assignments of error are without merit.

*265 MOTION FOR NEW TRIAL
In assignment of error twenty-seven, the defendant claims the trial court erred in denying his motion for new trial. This assignment of error is meritless.
The defendant contends that a new trial should have been granted because the video taped statement was not given voluntarily, there was insufficient evidence to support the conviction and the verdict was contrary to the law and evidence LSA-C. Cr.P. Art. 851. The trial court denied the defendant's motion.
For the reasons previously stated, we find the video taped statement was given freely and voluntarily and was properly admitted in evidence. Further, the testimony of the victim that this defendant participated in the attack upon him during the robbery of his store, together with the admissions of guilt made by the defendant in addition to the contested video taped statement, provide ample evidence upon which to base the defendant's conviction.
Refusal to grant a motion for new trial is within the sound discretion of the trial court and such a decision will not be reversed absent a showing of abuse of discretion. State v. Rollins, 351 So.2d 470 (La.1977). In the present case there was no abuse of discretion.
The trial court's denial of the defendant's motion for new trial was correct.

EXCESSIVE SENTENCE
In assignment of error twenty-eight, the defendant contends that the trial court imposed an illegal, excessive and unconstitutional sentence. The defendant, a first felony offender, claims the trial court erred in sentencing him to 35 years at hard labor without benefit of parole, probation or suspension of sentence. This assignment of error is without merit.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983)
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
A trial court is not required to render a suspended sentence or probation on a first felony offense, but may consider *266 whatever factors and evidence is deemed important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, supra.
In the present case, the trial court adequately complied with the sentencing provisions of LSA-C.Cr.P. Art. 894.1. At the sentencing, the trial judge filed into the record written reasons for the sentence imposed as well as orally stating reasons on the record. The trial court considered the defendant's youth and the fact that, at age 18, he was in the ninth grade in high school. The court also considered the defendant's prior criminal record which consisted of only one arrest for possession of marijuana, with no disposition on that arrest.
The court found numerous aggravating circumstances. The court noted that the defendant and his accomplice planned to commit this crime, visiting the store earlier in the day and returning later to commit the robbery. The court also noted this crime was perpetrated by two young, strong males upon an elderly shop keeper in an isolated country store. The court also considered that while his accomplice held the victim this defendant struck the victim on the head with a metal object causing a large cut down to the bone of the skull and causing profuse bleeding. The court also considered the medical testimony at trial which revealed that the blow received by the victim could very easily have resulted in his death.
The court also found that the defendant showed no remorse following the commission of this crime and took the matter "very, very lightly." The court noted that following the robbery the defendant and his cousin spent the night in a motel with their girlfriends and the next day the defendant entrusted his share of the robbery proceeds to his cousin.
The court found that there was an undue risk that the defendant would commit another crime during a period of suspended sentence or probation, the defendant was in need of correctional treatment best provided by commitment to an institution and that any lesser sentence would deprecate the seriousness of the offense. The court found there was no provocation or justification for the offense and that imprisonment would not impose an undue hardship on the defendant or his family.
LSA-R.S. 14:64 provides that the penalty for armed robbery is not less than 5 years nor more than 99 years at hard labor without benefit of parole, probation or suspension of sentence. The defendant was sentenced to 35 years at hard labor without benefit of parole, probation or suspension of sentence which is in the middle range of sentences that may be imposed for this offense. Although such a sentence for a first felony offender in some cases may be excessive, given the premeditated nature of this offense and the severity of the attack upon the elderly victim, the sentence was tailored to both the offender and the offense and is not excessive.

CONCLUSION
For the reasons stated above, the defendant's conviction and sentence are affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, JASPER E. JONES, HALL and MARVIN, JJ.
Rehearing denied.
NOTES
[1] In his statement of May 1, 1986, the defendant said he struck the victim with a pipe. In his statement on May 7, 1986, the defendant said he struck the victim with a .22 caliber pistol.
[2] During the videotaping of the defendant's statement, a representative of the district attorney's office was present. The assistant district attorney present during the taping of the statement was not the same assistant handling the trial of this case. The assistant handling the trial was apparently not aware of the existence of the tape until shortly before the trial was to begin and he promptly notified defense counsel. At trial, defense counsel did not seek a continuance or recess nor did he question the good faith of the district attorney's office in failing to advise him earlier of the existence of the statement.
[3] U.S. v. Starks, 515 F.2d 112 (3rd Cir.1975) outlines the following the federal requirements which must be met to establish a foundation for the admission of a sound recording:

A review of the authorities leads to the conclusion that, before a sound recording is admitted into evidence, a foundation must be established by showing the following facts:
(1) That the recording device was capable of taking (sic) the conversation now offered in evidence.
(2) That the operator of the device was competent to operate the device.
(3) That the recording is authentic and correct.
(4) That changes, additions or deletions have not been made in the recording.
(5) That the recording had been preserved in a manner that is shown to the court.
(6) That the speakers are identified.
(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement. United States v. McKeever, 169 F.Supp. 426, 430 (S.D.N.Y.1958).