709 So.2d 213 (1998)
STATE of Louisiana, Plaintiff-Appellee,
v.
Shawn James GASPARD, Defendant-Appellant.
No. 96-1279.
Court of Appeal of Louisiana, Third Circuit.
February 11, 1998.
*215 Michael Harson, Lafayette, Keith A. Stutes, Asst. Dist. Atty., for State.
Alfred Frem Boustany, II, Lafayette, for Shawn James Gaspard.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
THIBODEAUX, Judge.
This supervisory writ application by Shawn Gaspard is the third time he has called upon this court to review the trial court's ruling on his motion to suppress his confession and inculpatory statements to the police. The state has charged the defendant with first degree murder. Originally, this court issued an unpublished writ opinion in State v. Gaspard, 95-1643 (La.App. 3 Cir. 1/25/96) which stated:

WRIT DENIED: There is no error in the trial court's rulings. The other crimes evidence is admissible at this time, subject to later review at trial on the merits. La. Code Evid. art. 1104; Huddleston v. U.S., 485 U.S. 681, 108 S.Ct. 1496 [99 L.Ed.2d 771] (1988). We further find the issue of special jury instructions concerning the aggravating circumstances of La.Code Crim.P. art. 905.4(A)(7) is premature.
The defendant, Gaspard, applied for a writ of certiorari with the Louisiana Supreme Court on February 1, 1996, and the supreme court granted the stay and remanded the matter to this court for briefing, argument, and issuance of an opinion concerning the suppression motion. State v. Gaspard, 96-0300 (La.2/5/96); 667 So.2d 525.
This court received additional briefs from the parties, heard oral arguments, and issued an opinion again denying the motion to suppress *216 filed by the defendant. State v. Gaspard, 95-1643 (La.App. 3 Cir. 5/8/96); 685 So.2d 151. The defendant, Gaspard, sought supervisory writs with the Louisiana Supreme Court. The Louisiana Supreme Court granted Gaspard's writ application and issued the following order:
Granted. The ruling of the admissibility of relator's statement is vacated and this case is remanded to the district court for retrial of the motion to suppress. See State v. Stevenson, 374 So.2d 1189, 1191 [(La.1979) ]; State v. Simmons, 328 So.2d 149, 153 (La.1976). The state shall have the opportunity to rebut, if it can, relator's allegations with regard to the manner in which he was detained in the hours before he made his statement. The district court shall rule anew on the voluntariness of relator's statement in light of any additional testimony and with specific reference to the pre-interrogation circumstances of relator's custodial detention. Relator may seek review in the court of appeal of any adverse ruling.
State v. Gaspard, 96-1390 (La.6/28/96); 675 So.2d 1100.
The trial court conducted the second suppression hearing on August 23, 1996, and both the state and the defendant introduced all evidence from the first suppression hearing conducted on November 27, 1995. At the conclusion of the hearing, the trial judge again denied the motion to suppress. We are now called upon to review the correctness of that ruling and to address as specifically as possible the issue articulated in the Louisiana Supreme Court's order granting Gaspard's writ.

FACTS
The facts of the murder and the investigation are detailed in the prior opinion by this court in Gaspard, 685 So.2d 151. When the supreme court vacated all prior rulings that the defendant's statements and confession were admissible, it did not rule that the rulings were wrong, but remanded the matter for another hearing on specific issues. The supreme court ordered that at this second hearing the district court would rule again on the voluntariness of Gaspard's statement with specific reference to the pre-interrogation circumstances of his custodial detention, and that the state would have the opportunity to rebut, if it could, relator's allegations with regard to the manner in which he was detained in the hours before he made his statement. See Gaspard, 675 So.2d 1100.
At the second suppression hearing, the defendant introduced enhanced audio of the videotape of Gaspard while he was in the interrogation room. The defendant presented no additional witnesses, but the state presented the testimony of Detectives Ted Blaine Vincent and Kelly Gibson, who had testified at the first suppression hearing.
At the conclusion of the hearing, the trial judge ruled:
BY THE COURT:
Okay, the Court is ready to render its ruling on the motion to suppress.
After a review of the transcript of the November, 1992[sic] hearing which I held on defendant's motion to suppress, and the additional testimony of Officers Gibson and Vincent, the Court finds that:
(1) The confession of defendant Shawn James Gaspard was given freely and voluntarily and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
(2) The defendant was handcuffed with one hand to a steel ring attached to a wall in the interview room, in a seated position for a period of up to six to seven hours. There was evidence that during his period of interrogation he was moved to another area for at least forty-five minutes while Detective Vincent interviewed co-defendant Mitchell Hebert in the interview room.
(3) Defendant Gaspard was offered and given food and the use of the restroom facility during the initial period prior to 6:30 p.m., when the videotape was turned on. Again, at approximately eight o'clock Detective Vincent offered food to the defendant.
(4) Defendant never once complained of any physical discomfort due to his being restrained to the wall.

*217 (5) The procedure use [sic] by the police to cuff defendant to the wall was done for security and safety reasons and not to obtain a confession from the defendant.
(6) There is no evidence that defendant confessed due to any physical discomfort, lack of food, use of bathroom facilities, or otherwise. The Court finds the defendant was not under duress by being restrained to the wall, nor due to any alleged lack of food or use of bathroom facilities. I further find defendant was not intimidated, threatened, or induced to confess by the manner in which he was interrogated or by the length of time of the interrogation process.
As a result, the defendant's motion to suppress is denied.
The defendant objected and gave notice of intent to seek supervisory writs.

LAW AND DISCUSSION
The defendant entreats us to grant this writ and reverse the trial court action which denied his motion to suppress. The arguments by the defendant can be separated into three issues: (1) did the defendant indicate in any manner that he wanted to remain silent? (2) could the police use the allegedly unconstitutionally-obtained statement of codefendant Mitchell Hebert to convince Gaspard to change his mind and confess? and, (3) were Gaspard's statements given freely and voluntarily?
Before a confession may be introduced in evidence, the state has the burden of proving that it was given freely and voluntarily, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451; La.Code Crim.P. art. 703(D). In Louisiana, the statutorily-mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary: and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. State v. Jackson, 381 So.2d 485 (La.1980).
The rule set forth by La.R.S. 15:451 complements the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that is, that a condition precedent to obtaining a statement admissible in court from a suspect in police custody is that the suspect be informed that he has the right to remain silent and to consult with an attorney. Miranda also made it clear that in order for such a statement to be admissible it must be made with a knowing and intelligent waiver of those rights. State v. Green, 94-0887 (La.5/22/95); 655 So.2d 272. Miranda waivers may be either explicit or implicit, North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); State v. Harvill, 403 So.2d 706 (La. 1981), and their validity turns on the totality of the circumstances surrounding the statement. Butler, 441 U.S. 369, 99 S.Ct. 1755.
The defendant continues to argue that he invoked his right to counsel; yet, the trial court at the first hearing rejected this claim, and the defendant has not presented any additional evidence to support his position. This question was a credibility determination by the trial judge that this court did not disturb on review. More importantly, the Louisiana Supreme Court must not have found it valid since the consequences of a defendant invoking his right to counsel are well-settled. In Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the United States Supreme Court, adopting the reasoning of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), held that once a defendant's Sixth Amendment Right to Counsel has attached, if a defendant requests the assistance of counsel or "assert[s]" his right to counsel, then any subsequent waiver obtained pursuant to police-initiated interrogation will be presumed involuntary, regardless of whether the waiver was actually voluntary, knowing, and intelligent. State v. Carter, 94-2859 (La.11/27/95); 664 So.2d 367. Thus, a bright-line rule was created as an exception to the traditional rule allowing for the waiver of the right to counsel, such that where a defendant has asserted his right to counsel, a later waiver in response to police-initiated interrogation is irrebuttably presumed invalid. Id. "The adoption of this prophylactic rule was based on the `supposition that suspects *218 who assert their right to counsel are unlikely to waive that right voluntarily in subsequent interrogations.'" Id. at 379, quoting Michigan v. Harvey, 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293 (1990).
Throughout his writ application, the defendant states that the invocation of the right to remain silent is treated the same as the invocation of the right to counsel since both are constitutionally-protected rights. Both rights are constitutionally protected, both are included in the Miranda warnings, and if a suspect invokes either right, the interrogation by the police must cease immediately. Yet, once these rights are invoked and the interrogation ceases, these rights are no longer treated equally. As noted above, there is a "bright-line" rule applied when a suspect invokes his right to counsel that bars the police from reinitiating contacts with the suspect; unless the accused reinitiates contact, no waiver of rights is valid and no statement will be admissible. State v. Abadie, 612 So.2d 1 (La.), cert. denied, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). On the other hand, if a suspect invokes his right to remain silent there is no permanent bar to the police reinitiating contact with the suspect. The decision in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), has been understood to mean that Miranda should not be construed to create a per se proscription of an indefinite duration upon further custodial interrogation of a defendant who asserts his right to remain silent. The question depends on the totality of the circumstances involved under the particular facts of each case. State v. Brooks, 505 So.2d 714 (La.), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Among the factors to be considered are who initiates the further questioning, the time delay between the original request and subsequent interrogation, whether Miranda warnings were given before each separate interrogation, whether waiver of rights forms were signed, and whether pressures were asserted on the accused by the police between the time he invoked his right and the subsequent interrogation. Id. Therefore, the invocation of the right to remain silent is not treated the same as the invocation of the right to counsel.
In the present case, the defendant contends he invoked his Miranda right to remain silent. In this court's prior opinion, we found that the defendant did not invoke any constitutional rights.
Gaspard's primary argument is that the police, by continuing to question him about the murder, failed to honor his invocation of his right to remain silent. In his brief, he does not say when he invoked his right to remain silent; it appears that he considers his oft-repeated claim, "I don't know nothing about no murder" to have been tantamount to refusing to give a statement and invoking his right to remain silent. We agree with the trial judge that this assertion was not an invocation of his right to remain silent; in no way were the police put on notice by this utterance that he was asserting the right to remain silent about the murder investigation.
Gaspard, 685 So.2d at 155.
In his present writ application the defendant argues that:
The District Court decisions and the prior Court of Appeal opinion made no reference to the fact that the defendant said he was ready to go after being told by the police officer that he would be immediately transported to the jail if he did not give a statement. This clearly indicates the defendant's choice to remain silent. However, neither the District Court's decisions nor the prior Court of Appeal opinion mentioned this statement even though the defendant said this on more than one occasion on the videotape.
(Emphasis added).
Further, the defendant argues that his statement, "I'm ready to go," was sufficient to invoke his right to remain silent. The defendant contends that "[t]here was nothing ambiguous about his statement that he was ready to be brought to jail. It could have no other meaning other than that he did not want to waive his right to remain silent and wanted to be brought to jail."
The Louisiana Supreme Court noted in Green, 655 So.2d at 280, n. 8, that there is a *219 difference between invoking one's Miranda rights and simply declining to waive these rights.
The position of an arrestee who has expressly invoked his Miranda rights, either to remain silent or to the assistance of counsel, is distinguishable from one who has been informed of his rights but has chosen for whatever reason not to avail himself of them. See Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). When a person in police custody invokes his Miranda rights, the conditions under which the police may legitimately continue interrogating that person, as well as the circumstances under which a valid waiver may be obtained, are rigidly circumscribed. See McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). When Miranda protections are not specifically invoked, on the other hand, police may continue questioning the suspect in the hope of obtaining a statement since "[t]he fundamental purpose of the Court's decision in Miranda was `to assure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process." Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 831, 93 L.Ed.2d 920 (1987) (citations omitted) (emphasis in original). Nevertheless, in either case the admissibility of any statement obtained through custodial interrogation ultimately depends upon whether the defendant, either expressly or impliedly, waived his rights prior to speaking. State v. Abadie, 612 So.2d 1 (La.1993), cert. denied, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993).
The question that arises, then, is did Gaspard invoke his Miranda rights or did he impliedly waive his right to silence by his actions and words.
In Carter, 664 So.2d 367, the Louisiana Supreme Court touched upon the question of when does a defendant invoke or assert his right to counsel. Although the issue in the present case is not whether the defendant invoked his right to counsel, but rather whether the defendant invoked his right to remain silent, Carter and Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) have squarely addressed the question of what must a suspect do to invoke one of the Miranda rights, and the analyses employed in these opinions are helpful. The supreme court in Carter noted that "[s]ome affirmative assertion of the right to counsel is necessary in order to give rise to the per se presumption in Michigan v. Jackson that a waiver, later made in response to police-initiated interrogation, could not possibly have been voluntary because of the earlier assertion of the right to counsel." Carter, 664 So.2d at 383. Carter later went on to assert that:
For purposes of Jackson, an "assertion" means some kind of positive statement or other action that informs a reasonable person of the defendant's "desire to deal with the police only through counsel." This holding does not require a defendant to utter the magic words, "I want a lawyer," in order to assert his right to counsel. As Montoya points out, the Supreme Court "give[s] a broad, rather than a narrow, interpretation, to a defendant's request for counsel." But interpretation, whether broad or narrow, is only required when there is a "request" or an "assertion" in the first place....
Id. at 384, quoting Montoya v. Collins, 955 F.2d 279, 283 (5th Cir.), cert. denied, 506 U.S. 1036, 113 S.Ct. 820, 121 L.Ed.2d 692 (1992).
In Davis, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362, the United States Supreme Court explained that invocation of the right to counsel required, at a minimum, some statement that could reasonably be construed to be an expression of a desire for the assistance of counsel, but if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood that it might be an invocation, there is no need to stop questioning nor is there a need to clarify the suspect's reference. "Rather, the suspect must unambiguously request counsel." Id. at 459, 114 *220 S.Ct. at 2355. If the invocation of the right to counsel must be unambiguous, then certainly the invocation of the right to remain silent must also be unambiguous. However, there are no magic words that need to be spoken.
The defendant has cited cases from other jurisdictions in which the suspects asked for a lawyer or, as in Christopher v. Florida, 824 F.2d 836, 840 (11th Cir.1987), cert. denied, 484 U.S. 1077, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988), the suspect said, "I got nothing else to say." However, it does not appear that Gaspard made a positive statement or other action that would have informed a reasonable person of his desire not to speak to the police. A finding that the defendant did not invoke his right to remain silent leads to the next questionwhether the defendant waived his right to remain silent.
The Louisiana Supreme Court recently noted in State v. Ross, 95-1798 (La.3/8/96); 669 So.2d 384, that a waiver of Miranda rights may be explicit as well as implied from the actions and words of the accused. See also State v. Samuels, 94-1408 (La.App. 4 Cir. 6/7/95); 657 So.2d 562.
Beginning with Butler, 441 U.S. 369, 99 S.Ct. 1755, the United States Supreme Court recognized that a defendant in custody did not have to expressly waive his Miranda rights in writing before the police could obtain an admissible statement.
"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecutor's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."
State v. Harvill, 403 So.2d 706, 709 (La.1981), quoting Butler, 441 U.S. at 373, 99 S.Ct. at 1757.
The Louisiana Supreme Court first applied Butler in State v. Brown, 384 So.2d 425, 426 (La.1980). However, three years before Butler, the Louisiana Supreme Court had already recognized that a defendant's waiver of his Miranda rights could be inferred from the fact that the defendant gave a statement or answered questions after the police gave the defendant the Miranda warnings. State v. Taylor, 336 So.2d 855, 857 (La.1976). In the present case, the defendant continued to talk with the detectives; at first he denied any knowledge of the murder, but after Mitchell Hebert, the codefendant, came in and told Gaspard, "It's over," Gaspard began to reveal his knowledge and involvement in the murder.
In Green, 655 So.2d 272, the supreme court considered the murder suspect's prior experiences with the criminal justice system and the fact that the suspect's statements to the police progressed from first denying culpability to attempting to diminish his participation in the murder. In finding that the suspect knowingly and voluntarily made the incriminating statements, the court noted that the defendant's statements evolved over time from denial to intentionally avoiding the consequences of his actions; however, the supreme court emphasized that its ultimate decision was not based solely upon these facts but the totality of the facts surrounding the interrogation. Id.
We feel that the defendant's waiver of his right to remain silent can be inferred from his actions and words.
The defendant has made allegations with regard to the manner in which he was detained in the hours before he made his statement. Accordingly, the state must rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Gachot, 609 So.2d 269 (La. App. 3 Cir.1992), writ denied, 617 So.2d 1180 (La.), cert. denied, 510 U.S. 980, 114 S.Ct. *221 478, 126 L.Ed.2d 429 (1993). The first contention of the defendant was that he was handcuffed to a ring on the wall of the interrogation room from 1:00 p.m. until after 8:00 p.m. and that he was denied food and use of the restroom. The videotape shows that the ring in question is approximately two or three feet above the floor, and Gaspard's right hand was cuffed to it while his left hand was free; although Gaspard could not stand up straight, he could easily sit and occasionally stood up to retrieve items from his pockets while his hand remained cuffed to the ring.
Detective Gibson testified at the second hearing that the ring on the wall of the interrogation room was used to secure prisoners by minimizing their movement. By handcuffing the defendant and other prisoners to the ring, the police insured the security of all persons in the building and prevented escapes. Detective Gibson disagreed that the defendant was not moved from the room from the time of his arrest until the end of the videotape. He testified that he brought Mitchell Hebert into the same interrogation room that the defendant was in before 6:30 p.m., and the defendant had been removed from the room before he and Hebert came inside. Hebert spoke with Detective Gibson in the room for approximately thirty to forty-five minutes, and he was in the interrogation room for approximately an hour to one hour and fifteen minutes. Detective Gibson also spoke with Gaspard, and he testified that Gaspard wanted to talk to the police but he was not giving the police the information they were looking for. Detective Gibson explained that he would not take the defendant to the jail until Detective Vincent, the lead investigator, spoke to Gaspard.
The trial judge specifically found that the procedure used by the police was done for security and safety reasons, and not to obtain a confession from Gaspard. The trial judge also found that Gaspard did not complain of physical discomfort nor the lack of food or denial of use of bathroom facilities. At least once on the videotape, the defendant was taken to the bathroom and given food, a soft drink and a cigarette. The evidence supports these findings of the trial judge, and these findings will not be disturbed.
Another claim of the defendant arises from Detective George Alfred's statements about the defendant telling the truth. In Gachot, 609 So.2d at 275, this court noted:
A mild exhortation to tell the truth, or telling a defendant that if he cooperates that "things will go easier" will not negate the voluntariness of a confession. State v. Jackson, 523 So.2d 251, 259 (La.App. 2 Cir.1988), writ denied, 530 So.2d 565 (La. 1988); State v. Cupit, 508 So.2d 996, 1805[sic] (La.App. 2 Cir.1987), writ denied, 514 So.2d 1174 (La.1987). If it does not appear that the statements of the police were designed to overcome the defendant's will or to produce a coerced confession, then the statement is admissible. State v. Murray, [546 So.2d 944, 947 (La.App. 3 Cir.1989)].
See also, State v. Magee, 93-643 (La.App. 3 Cir. 10/5/94); 643 So.2d 497.
In this court's prior opinion, State v. Matthews, 26,550, pp. 5-6 (La.App. 2 Cir. 12/21/94); 649 So.2d 1022, 1027, writ denied, 95-0435 (La.6/16/95); 655 So.2d 341, was quoted:
A confession obtained by direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. State v. Morvant, 384 So.2d 765 (La.1980); [State v.] Leonard, [605 So.2d 697 (La.App. 2 Cir.1992)]. However, a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will "do what he can" or "things will go easier," does not negate the voluntary nature of the confession. [State v.] English, [582 So.2d 1358 (La.App. 2 Cir.), writ denied, 584 So.2d 1172 (La.1991)]. Further, informing a defendant that the district attorney will be advised of any cooperation is insufficient to overcome the free and voluntary nature of a confession. State v. Vernon, 385 So.2d 200 (La.1980); State v. Jackson, 523 So.2d 251 (La.App. 2d Cir. 1988), writ denied, 530 So.2d 565 (La.1988).
Our prior opinion noted that numerous cases have allowed statements to be admitted when the police simply inform a defendant *222 that the district attorney would be informed about his cooperation. State v. Petterway, 403 So.2d 1157 (La.1981); State v. Vernon, 385 So.2d 200 (La.1980); State v. Landry, 502 So.2d 281 (La.App. 3 Cir.), writ denied, 508 So.2d 63 (La.1987); State v. Thomas, 470 So.2d 413 (La.App. 3 Cir.1985); State v. Sanford, 569 So.2d 147 (La.App. 1 Cir.1990), writ denied, 623 So.2d 1299 (La.1993); State v. Peters, 546 So.2d 829 (La.App. 1 Cir.), writ denied, 552 So.2d 378 (La.1989); State v. Peters, 542 So.2d 592 (La.App. 1 Cir.1989); State v. Jackson, 523 So.2d 251 (La.App. 2 Cir.), writ denied, 530 So.2d 565 (La.1988). On the other hand, when the police actually make a promise to have the charge reduced or seek reduction in sentence in return for the defendant's statement, the courts do not hesitate to suppress the statement. State v. Leonard, 605 So.2d 697 (La.App. 2 Cir.1992); State v. Hankerson, 604 So.2d 1330 (La.App. 1 Cir.1992).
Our previous opinion also noted that Detective Vincent did not offer to have the murder charge reduced in return for the defendant's statement. Therefore, the detective's statement that the defendant's cooperation would be noted in a report about the murder investigation to be submitted to the district attorney was not considered an improper inducement made to obtain a confession from Gaspard.
Shawn Gaspard also argues that the police illegally obtained a confession from eodefendant, Mitchell Hebert, and then used this confession to induce Shawn Gaspard to confess. In Louisiana, a defendant does not have standing to challenge the violation of another person's right to remain silent as guaranteed by the Fifth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution. State v. Singleton, 376 So.2d 143 (La.1979); State v. Walker, 430 So.2d 1327 (La.App. 3 Cir.1983); State v. Hawkins, 490 So.2d 594 (La.App. 2 Cir.), writ denied, 494 So.2d 1174 (La.1986). Therefore, Gaspard does not have standing to Complain about any alleged violation of his codefendant's right to remain silent. Also, the videotape clearly establishes that Gaspard was not allowed to view or listen to Hebert's confession, he did not know if Hebert's confession was illegally obtained, and he persisted in asking to see Hebert, who had refused to see Gaspard. Mitchell Hebert finally agreed to see the defendant, and when Hebert came in the room, the defendant said, "You cracked?" Hebert responded, "It's over." The defendant then said, "M-----f-----." Hebert walked out of the room. The defendant cannot complain even if Hebert's confession were illegally obtained, and the videotape refutes Gaspard's claim that the police illegally induced him to confess by use of Hebert's tainted confession.
The question whether the confession of Shawn Gaspard is admissible is primarily a credibility determination. Shawn Gaspard claimed he asked for a lawyer, and the detectives who testified stated they never heard the defendant make such a request. Gaspard also claimed that Detective Vincent promised to cut a deal if he gave a confession. Detective Vincent claimed that Gaspard was the one who asked if giving a statement would help and he simply informed Gaspard that such information would be put in a report and the district attorney would review it. Furthermore, at the beginning of the audiotaped confession, Gaspard informs Detective Vincent that he had initially refused to give Detective Vincent a statement about the murder, but he had changed his mind about an hour later.
When the trial judge issues a ruling on a defendant's motion to suppress, the appellate court looks at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court will not overturn a trial court's ruling unless the trial judge's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses or a palpable or obvious abuse of discretion. State v. Burkhalter, 428 So.2d 449 (La.1983). The evidence presented at the two hearings supports the conclusions of the trial judge. The trial judge did not err in once again denying Shawn Gaspard's motion to suppress. A trial court's conclusions on credibility and the weight of testimony regarding the voluntariness of a confession for admissibility purposes will not be overturned on appeal unless they are unsupported by the evidence. *223 Gachot, 609 So.2d 269. This is not such a case.

CONCLUSION
There is no error in the trial court's ruling denying the motion to suppress. The writ application of the defendant, Shawn Gaspard, is, therefore, denied. The trial court properly denied his motion to suppress, finding the statement to have been given freely and voluntarily, and not in violation of his Miranda rights.
WRIT APPLICATION DENIED.