475 So.2d 29 (1985)
STATE of Louisiana
v.
Clifford BRAUD.
No. KA-2565.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 1985.
Rehearing Denied September 27, 1985.
*30 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Kathy Lee Torregano, Michael E. McMahon, Asst. Dist. Attys., New Orleans, for plaintiff-appellee, State of La.
Max Zelden, New Orleans, for defendant-appellant Clifford Braud.
Before GULOTTA, WARD and WILLIAMS, JJ.
WARD, Judge.
A Grand Jury of Orleans Parish indicted Clifford Braud, age fifteen, and two co-defendants for the crime of first degree murder. The indictment charged that on October 30, 1982, the three defendants committed an armed robbery of a grocery store in the 3900 block of St. Claude Avenue in New Orleans during which Berardo Valdivia, the owner of the store, was fatally shot.
Braud filed numerous pretrial motions, including two motions asking the Trial Court: 1) to appoint a commission to determine Braud's mental capacity to stand trial and 2) to suppress Braud's confession. After consideration of the evidence presented by counsel, the Trial Court denied both motions. The State set the matter for trial as to Clifford Braud; the trial of the two co-defendants was scheduled for a later date. At Braud's trial the jury was unable to reach a verdict and the judge declared a mistrial. Subsequently, the prosecution amended the indictment to charge Braud with second degree murder. After a second trial, Braud was found guilty as charged and sentenced to life in prison without benefit of parole, probation or suspension of sentence.
Alleging nine assignments of error in this appeal, Braud seeks reversal of his conviction. For the purpose of discussion, those assignments briefed by counsel for Braud have been consolidated into four issues.

DEFENDANT'S CAPACITY TO STAND TRIAL
Braud's counsel first contends that the Trial Court erred when it ruled that he was competent to stand trial. Counsel argues that Braud's subnormal intelligence rendered him incapable of comprehending the nature and seriousness of *31 the trial, and as a consequence, he was unable to assist in his own defense. We reject this argument. The defendant bears the burden of establishing by a clear preponderance of the evidence that he is incompetent to stand trial as a result of a mental infirmity. State v. Charles, 450 So.2d 1287 (La.1984).
Two court-appointed psychiatrists and a clinical psychologist employed by Braud's attorney evaluated Braud's mental capacity. All three doctors agreed that Braud has below average intelligence evidenced by an I.Q. between 65 and 75. Disagreeing with the clinical psychologist, the court-appointed psychiatrists believed that Braud had the mental capacity to stand trial. After considering these opinions, the Trial Court held that Braud possessed the mental capacity to stand trial. This finding of fact is supported by the record; we, therefore, find no error in the ruling.

THE CONFESSION
Braud also contends that the Trial Court erred when it refused to suppress his videotaped confession since he did not understand his Miranda rights and because he did not have the benefit of a meaningful consultation with an attorney or a family member before he confessed to the crime.
A suspect who is in the custody of police must be advised of his constitutional rights before interrogation. When the suspect is a juvenile, more is required before it can be said with confidence that the suspect knowingly and intelligently waived those rights. A juvenile is not permitted to waive constitutional rights on his own. Instead, a juvenile's waiver is made knowingly and intelligently only when, prior to the waiver, the juvenile has actually consulted with an attorney or an adult who is interested in his welfare, and then only after the adult has been fully advised of the rights of the juvenile. State in the Interest of Dino, 359 So.2d 586 (La.1978).
When the accused is an adult, diminished mental capacity does not itself vitiate the ability to waive constitutional rights knowingly and intelligently or to make a free and voluntary confession. The critical inquiry is whether the accused was able to understand the rights explained to him and to voluntarily give a statement. State v. Lindsey, 404 So.2d 466 (La.1981).
When the accused is a juvenile who is of subnormal intelligence, such as Braud, consultation with an attorney or an adult who is interested in the juvenile's welfare is more critical than ever. Hence, the State has a heavy burden to show that before confessing, the juvenile had a meaningful consultation and then an intelligent waiver.
We believe the State proved that it used adequate procedural safeguards to protect Braud's constitutional rights. Three police officers testified that at the time of Braud's arrest he was advised of his Miranda rights and the right to have a parent or legal guardian present. In route to the police station, Braud informed the officers of his father's address, and an officer went to the father's home and brought him to the police station to speak with his son. Detective Curole of the homicide division testified that he explained Braud's arrest and Miranda rights to the father when he arrived at the station. Curole then requested that the father speak with his son in private to determine whether the son wanted to make a confession. Detective Doucette corroborated this testimony. Several police officers testified that the father and son then met in a partitioned room by themselves. After consulting with his son the father advised Curole that Braud was willing to make a statement, and Braud and his father agreed that the statement could be recorded on videotape.
The tape begins with Curole again explaining Braud's Miranda rights in "plain English" to both Braud and his father. Additionally, Braud and his father stated on tape that they understood the constitutional rights that Braud was waiving. The three police officers and videotape operator present during the taping all testified that Braud and his father did not appear confused at any time. Braud and his father both signed the waiver of rights form.
*32 We may presume that from the filial relationship itself there is an interest of a father in his son's welfare. Mr. Braud's presence at the police station, his conversations with his son, and his apparent desire to help him all confirm this interest.
We conclude, as the Trial Court did, that the Miranda and Dino standards were met, and that Braud intelligently waived his constitutional rights before making his confession.
Braud also asserts that his videotaped confession should have been suppressed by the Trial Court because he made it under the influence of fear and duress. The State has the burden to prove beyond a reasonable doubt that a defendant's confession was given freely and voluntarily. La.Rev.Stat.Ann.art. Section 15:451 (West 1981); State v. Benoit, 440 So.2d 129 (La.1983). Braud testified that he was beaten by the police at the time of his arrest and while he was in custody prior to speaking with his father. Braud's father, however, testified that when he met with Braud shortly after his arrest, he saw no marks on him. Braud did not mention any misconduct by the police when he spoke privately with his father. Five police officers testified and refuted Braud's charges that he was beaten. Through this testimony, corroborated by the testimony of Braud's father, the State clearly established beyond a reasonable doubt that Braud's confession was given freely and voluntarily.
We, therefore, conclude that Braud's assignments of error relating both to an intelligent and to a voluntary waiver of constitutional rights are without merit and the motion to suppress Braud's videotaped confession was properly denied by the Trial Court.

EVIDENTIARY RULING
Braud next contends that the Trial Court erred in allowing the videotaped confession into evidence because the State failed to lay a proper foundation for its introduction. We disagree. Photographic evidence becomes admissible when a witness has testified that it is a correct and accurate representation of what was personally observed by that witness. State v. Moore, 419 So.2d 963 (La.1982).
During Braud's trial, Pamela Cohen testified that she operates the videotape machine for the New Orleans Police Department. She testified that Braud's confession had to be taped twice because the machine malfunctioned the first time. Cohen and three police officers all testified that they were present throughout both taping sessions. The tape contains an explanation by the police officer to Braud and his father that the video machine had malfunctioned and that the police were taping a second confession. Both Braud and his father stated that they understood and would allow a second taping. Cohen, who reviewed the tape after it was made, further testified that the tape was a fair, accurate depiction and that it had not been edited or altered in any way. We hold the Trial Judge did not err when he ruled the state laid a proper foundation for the introduction of the videotaped confession at trial.

JURY INSTRUCTIONS
Braud claims that the Trial Court erred in denying a new trial because of improper instructions to the jury concerning the defense of coercion. A judge need only charge a jury as to the law applicable to the case. La. Code Crim.Proc. Ann. art. 802 (West 1981). This article has been interpreted to require the trial judge to charge as to each and every phase of the case arguably supported by the evidence. State v. Miller, 338 So.2d 678 (La.1976). There is, however, no credible evidence of coercion in the record before us. Thus, we need not reach the issue of whether the Trial Judge properly charged the jury as to coercion.
For the foregoing reasons, Clifford Braud's conviction and sentence are affirmed.
AFFIRMED.