546 So.2d 944 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Donald MURRAY, Defendant-Appellant.
No. CR 88-1132.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*945 Louis Vogt, Indigent Defender, Vidalia, for defendant-appellant.
John Johnson, Dist. Atty., Vidalia, for plaintiff-appellee.
Before STOKER, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
Defendant, Donald Murray, was convicted of second-degree murder, in violation of La.R.S. 14:30.1, and sentenced to life imprisonment at hard labor.
On the morning of July 5, 1986, Mrs. Pinkney Ashford, 81, was found lying dead on her kitchen floor. She had been stabbed numerous times in the chest and side with a butcher knife. The police began their investigation by interviewing neighbors, one of whom was the defendant. Defendant and his wife rented property from Mrs. Ashford on the same street near the victim's home. The police interviewed Murray on several occasions.
Defendant was arrested after he was connected to a black gun box containing a small caliber pistol which relatives of the victim said was missing from Ashford's home. Defendant's wife told police that when she returned home in the early hours of July 5, she decided to empty her laundry *946 basket before going to bed, because she planned to wash clothes later that day. She discovered the black gun box amongst the dirty laundry. She placed the box in the waste paper basket. After she awoke later that morning, she noticed the box had been removed. Later police learned that the defendant pawned a small caliber pistol in Natchez, which is across the Mississippi River from where the crime was committed. The police suspected defendant of first degree-murder and arrested him on July 16, 1986.
Defendant was interrogated that day by Police Chief Lyle Schiele, Chief Deputy Sheriff Gary Wiley, Deputy Sheriff Richard Tubbs, and Investigator Paul Scott. Between 5:00 p.m. and 6:00 p.m., the officers tape-recorded their conversation with the defendant. Defendant claimed that a person named James asked him to pawn the gun in Natchez, but he could not recall James' last name. At 6:00 p.m. Schiele, Tubbs, and Scott left the room. Wiley continued to question the defendant without taping the conversation.
Wiley talked to the defendant about the importance of telling the truth, quoted the Bible, and used an illustration of a mockingbird as a messenger from God for defendant to be honest. According to Wiley, defendant continually changed his story when the two were left alone. Initially defendant told Wiley that he lied about a man named James asking him to pawn the gun. He said he really found the gun outside Mrs. Ashford's house. At another point in the interview, defendant stated that a person named Lamond Snyder gave him the gun. Later still defendant said that the gun was beside Mrs. Ashford's steps, and that he retrieved it and knocked on her door. When he received no answer, he looked through the window and saw Ashford lying on the floor, bloodied from apparently self-inflicted wounds.
Finally, defendant gave the statement sought to be suppressed. He claimed he had gone to Mrs. Ashford's house to borrow money. The door was open and he decided to enter and call her name. After walking into the kitchen, he saw Mrs. Ashford pointing a gun at him. Defendant said he identified himself, but she apparently did not recognize him and did not put the gun down. When defendant grabbed the gun, Mrs. Ashford reached with the other hand for a knife. A struggle ensued. Every time Mrs. Ashford tried to stab him, he pushed the knife aside and Mrs. Ashford stabbed herself, doing so numerous times in the scuffle. Defendant said he disposed of the knife in Ashford's garden.
During the interview with Wiley, defendant requested to see his wife, and she apparently spoke with defendant twice between 6:00 p.m. and 8:00 p.m. During the second visit, she criticized the defendant for not calling an ambulance for Mrs. Ashford. At this point it appeared to Wiley that defendant's spouse was hysterical and he stated that this encounter upset the defendant.
Defendant moved to suppress the statement by alleging that he was coerced by Wiley. In addition to coercion by means of appeals to religion, defendant alleges that Wiley made threats to him warning him to confess or face electrocution as punishment for the Ashford murder. Defendant claims that he finally capitulated to stop being questioned.
The judge denied the motion to suppress, and the statement was admitted at trial. Defendant appeals contending the trial court erred in denying his motion to suppress.
ERROR PATENT:
In the examination of the record an error patent was discovered. La.C.Cr.P. art. 920(2). The minutes reflect that the sentence was imposed immediately after the trial judge denied defendant's motion for a new trial, in an apparent violation of C.Cr.P. art. 873, which declares that sentence shall not be imposed upon a defendant until twenty-four hours have elapsed since denial of the motion for a new trial. The minutes do not indicate that defendant waived the delay period.
An error patent which does not affect the fundamental fairness of the process does not require remand or reversal *947 unless prejudice is shown. State v. White, 404 So.2d 1202 (La.1981); State v. Minor, 474 So.2d 546 (La.App. 3 Cir.), writ denied 478 So.2d 144 (La.1985). In this case there has been no objection contending or suggesting that defendant was prejudiced by the violation of Article 873. The purpose for the delay is to allow defendant extra time within which to file further pleadings. State v. McDaniel, 340 So.2d 242 (La.1976). The defense had the opportunity to file a motion for a new trial and the motion was denied. Therefore, it appears that defendant was not prejudiced, and that the immediate sentence did not affect the fundamental fairness of the process. There was no prejudice contended, nor any reflected from the record, by the court's failure to observe Article 873. The error patent does not constitute reversible error.
THE ASSIGNMENT OF ERROR:
Defendant contends the trial court erred in denying his motion to suppress his statements to the police. He argues the statement was obtained in violation of the Fifth Amendment of the United States Constitution and La.R.S. 15:452.
Defendant advances specific explanations of what occurred when he and Chief Wiley were alone, that caused him to give the inculpatory statement. He maintains Wiley's discussion of God and scripture, as well as the illustration of the mockingbird, coerced him into confessing. Defendant also claims that seeing his wife when she was hysterical greatly upset him, and that Wiley's continued references to the electric chair threatened him into telling the officer what defendant believed he wanted to hear. Defendant declares that without this statement, the state would not have been successful in proving its case against him.
Confessions obtained by any direct or implied promises or by the exertion of improper influence are involuntary and inadmissible as a matter of constitutional law. Hutto v. Ross, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). In Louisiana the statutorily mandated test for voluntariness is whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. The state has the burden of affirmatively proving beyond a reasonable doubt that a confession was free and voluntary. State v. Landry, 502 So.2d 281 (La.App. 3 Cir.1987), writ denied, 508 So.2d 63 (La.1987).
Whenever the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the State to rebut these allegations specifically. State v. Davis, 380 So.2d 607, 610 (La.1980). To do this "... it [is] incumbent upon the State to call other witnesses to corroborate the testimony of the deputy who took the confession and to rebut defendant's own testimony with reference to his mistreatment. The State [should call] for this purpose some or all of the ... other officers who were with the deputy and the prisoner ...". State v. Honeycutt, 216 La. 610, 616, 44 So.2d 313, 315 (1950).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless it is not supported by the evidence. State v. Jackson, 381 So.2d 485 (La.1980). State v. Howard, 505 So.2d 228 (La.App. 3 Cir.1987).
At the suppression hearing the state called every officer present the night defendant was questioned after his arrest. Because the alleged abuses occurred when Wiley and the defendant were alone, this inquiry depends heavily on the testimony of the two men and the trial judge's credibility determination.
Defendant's complaint regarding Chief Wiley's references to God and scripture appear to be specious. When questioned whether these statements upset him, defendant plainly admitted they did not. Defendant said he reads the Bible daily and Wiley testified that defendant seemed well versed in the Scriptures.
During the questioning, a mockingbird apparently perched itself on a window sill *948 in Wiley's and defendant's view. Wiley asked defendant if he believed God ever used birds as messengers. Defendant answered that he did, recalling the account of the flood and Noah sending birds out after the rain stopped. Wiley suggested to the defendant that this bird might be a messenger from God for defendant to tell the truth. According to Wiley, this illustration did not unnerve the defendant, and defendant did not actually testify that it did. Wiley stated that he shares his Christian convictions and faith with anyone with whom he speaks. Whether or not Wiley's timing showed good judgment, his evangelism does not appear to have been designed to overcome the defendant's will, nor does it appear to have produced a coerced inculpatory statement. Wiley's exhortations for honesty were an appropriate response to a suspect who had offered five different versions of how he came to be in possession of the victim's pistol.
Defendant complains that the encounter with his wife unduly influenced him to make the statement. It must be noted that defendant requested to see his wife and that he told Wiley that if his wife was present, he would tell the truth. The state should not be penalized for complying with a defendant's request, especially here where defendant told the officer that to do so would facilitate the truth-finding process. Moreover, it is not reasonable to believe that defendant's self-interest to avoid conviction would be overcome by seeing his wife very upset. Defendant argues that this incident along with the anxiety he was feeling as a consequence of being suspected of murder caused him to make the inculpatory statement. The defendant admitted however, that the interrogation process was not altogether new to him. Defendant had been questioned before regarding a homicide to which he confessed. Defendant's prior dealings with a murder investigation as well as his natural instinct to protect himself, are factors showing the defendant would not confess to a murder if he was truly innocent.
Defendant maintains that Wiley repeatedly threatened him with the possibility of his being sentenced to die by electrocution. Wiley flatly denied this, and the trial judge apparently believed Wiley. Neither defendant's brief nor the record suggest that the trial judge's credibility determination was an abuse of discretion.
The state met each allegation of defendant and proved beyond a reasonable doubt that the statement was not coerced.
Finally, defendant claims that without the statement the state would not have met its burden of proof. Only the suppression hearing transcript was lodged with the record, but the minutes reflect that the prosecution introduced an abundance of evidence. The state's case was comprised of twenty-seven witnesses and sixty-nine exhibits, which took three days to present. Among the state's evidence introduced was the murder weapon and pawn shop receipt, as well as defendant's wife's testimony. It would appear, therefore, that the state proved the case with much more than merely defendant's statement. In any event, we find no error in the denial of the motion to suppress.
CONVICTION AFFIRMED.