609 So.2d 269 (1992)
STATE of Louisiana
v.
Michael J. GACHOT.
No. Cr 92-313.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*271 Charles Riddle, III, Marksville and Dan McKay, Bunkie, for defendant-appellant.
J. Edward Knoll, Dist. Atty., Marksville, for plaintiff-appellee.
Before GUIDRY, J., and CULPEPPER[*] and SALOOM[*], JJ. Pro Tem.
KALISTE J. SALOOM, Jr., Judge Pro Tem.
The defendant, Michael J. Gachot, was convicted on January 8, 1992, after trial by jury of the murder of his parents, Carl and Lois Gachot. For count one, the murder of Carl Gachot, defendant was found guilty of manslaughter and sentenced to twenty-one (21) years at hard labor. For count two, the murder of Lois Gachot, defendant was found guilty of second-degree murder and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. These sentences are to be served consecutively. From these convictions and sentences, defendant appeals assigning eighteen (18) errors.

FACTS:
The defendant, Michael Gachot, was fifteen (15) years old at the time of the shootings of his mother and father. On Friday, September 6, 1991, the defendant and his parents left their home on the grounds of the Louisiana State Penitentiary at Angola, Louisiana, to go to their weekend home in the Dupont community in Avoyelles Parish. Defendant's father was employed as an investigator at the state prison and defendant's mother was employed as a secretary. The Gachots arrived at their trailer in the Dupont community around 8:00 p.m. Defendant unloaded the family's car and van, and began picking up some papers left in the trailer by his half brother, Clay Gachot. Clay Gachot was twenty-three (23) years old and lived at the family's trailer during the week, but left to live with the grandparents when the family arrived on weekends. Clay Gachot was not home at the time of the shootings.
Defendant's parents had been discussing separation and ultimately, divorce. According to defendant, the issue of his custody came down to neither parent wanted him but neither parent wanted the other parent to have him. Defendant was having problems with both parents, but particularly with his father. Defendant testified that his father had accused him of being a homosexual, called him names such as "queer", "faggot", and threatened to kill defendant's mother in front of defendant and then kill defendant, if he ever found out that defendant was indeed homosexual. Prior to departing from Angola, defendant claimed his father told him that he now knew him to be homosexual.
On the night of September 6, 1991, defendant's parents began to argue again about their separation and divorce. Defendant testified he was going to run away on September 6, 1991, because he was so unhappy. Defendant claimed he was told to leave, but he decided to stay and persuade his parents to work out their differences. *272 During the course of the argument, defendant's father again began to verbally attack defendant, and defendant claims he lost awareness of his actions until after he had shot both his father and mother.
Defendant called his brother, Clay, who was at the home of his girlfriend and told him of the shootings. Defendant told Clay his father shot his mother and then tried to shoot defendant, but in a struggle over the gun defendant shot his father. Clay Gachot, who had been employed at the Avoyelles-Bunkie Detention Center as a booking deputy, called Deputy Charles Bryant and then went to the home of Deputy Vincent McGlone. Both deputies were his friends. Deputy McGlone lived close to the Gachot home and after Clay told him what had happened, Deputy McGlone went to the home to render aid and then secure the scene.
Once the coroner, Dr. L.J. Mayeaux, Jr., and the detectives arrived at the scene, their investigation led to physical findings inconsistent with the defendant's version of what occurred. Defendant had been asked to go from his grandparents' home to the Avoyelles Parish Sheriff's Office in Marksville to give a statement the first of which ended at 12:51 a.m. After defendant gave his second statement which ended at 2:25 a.m., the coroner and a detective confronted him with their findings. Defendant eventually gave a third statement, shortly after 3:00 a.m., confessing to both killings.
Originally indicted for two counts of first-degree murder, the state ultimately amended the charges to two counts of second-degree murder after it realized that Thompson v. Oklahoma, infra, and State v. Stone, 535 So.2d 362 (La.1988), would prevent it from seeking the death penalty for a 15 year old. After trial by jury, defendant was found guilty as charged for the murder of Lois B. Gachot, and guilty of manslaughter for the murder of Carl Gachot.

ASSIGNMENT OF ERROR NO. 1:
By his first assignment of error, defendant claims the trial court erred in denying a Motion to Quash the indictment based upon the unconstitutionality of La.R.S. 13:1570, repealed by Acts 1991, No. 235, § 17, effective January 1, 1992. As of January 1, 1992, the new Children's Code became effective, and the substantive provisions of La.R.S. 13:1570 were incorporated into Children's Code article 305. See official comments to Ch. Code Art. 305.
At the time defendant was indicted, La. R.S. 13:1570 (1984) provided:
Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:
* * * * * *
(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape, or a person who, after becoming sixteen years of age or older, is charged with having committed armed robbery, aggravated burglary, or aggravated kidnapping. Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall retain jurisdiction over his case, even though the child pleads guilty to, or is convicted of, a lesser included offense, and a plea to, or conviction of, a lesser included offense shall not revest the court exercising juvenile jurisdiction of such a child.
Defendant argues that the failure of the statute to provide a transfer hearing and a rebuttable presumption in favor of the juvenile remaining under juvenile court jurisdiction renders the applicable statute unconstitutional. Defendant cites Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), for the proposition that a transfer hearing is constitutionally mandated and the failure to so provide renders the Louisiana scheme unconstitutional. A reading of the opinion in Thompson reveals that the Supreme Court held that the imposition of the death penalty upon criminals who were under sixteen (16) years of age at the time of the crime was unconstitutionally cruel and unusual punishment. Nowhere in the Thompson opinion does the Supreme Court discuss the validity of the court procedures used in the case.
*273 In State v. Perique, 439 So.2d 1060 (La. 1983), the Louisiana Supreme Court ruled that La.R.S. 13:1570 was constitutional. None of the cases cited by defendant support his claim that La.R.S. 13:1570, which was repealed and replaced by Children's Code Article 305, is unconstitutional. Therefore, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. 2:
By his second assignment of error defendant contends the trial court erred in denying his Motion to Suppress his three statements to the police. In particular, defendant claims that the police did not comply with the requirements of State in the Interest of Dino, 359 So.2d 586 (La. 1978), rehearing denied, and that defendant's third statement confessing to the crimes was the product of improper promises, inducements and coercion.
In Dino the Louisiana Supreme Court stated the requirements for validly obtaining a statement from a juvenile:
Accordingly, the purported waiver by a juvenile must be adjudged ineffective upon the failure by the State to establish any of three prerequisites to waiver, viz., that the juvenile actually consulted with an attorney or an adult before waiver, that the attorney or adult consulted was interested in the welfare of the juvenile, or that, if an adult other than an attorney was consulted, the adult was fully advised of the rights of the juvenile (footnotes omitted) Id., p. 594.
If the state establishes compliance with the three requirements of Dino, then the juvenile defendant's statement is admissible.
In order to more fully understand defendant's arguments, the facts leading up to defendant's confession should be examined more closely. The shootings occurred about 9:00 p.m. on Friday, September 6, 1991. Defendant called his brother, Clay, who was at the home of his girlfriend and told Clay that during an argument between his parents, his father shot his mother and tried to shoot defendant, but defendant wrestled the gun away and then shot his father. Clay then went to the home of Deputy Vince McGlone. Deputy McGlone testified that Clay came to his house at 9:15 p.m., and after Clay told him what happened, he arrived at the Gachot trailer at 9:25 p.m.
Shortly after Deputy McGlone arrived and secured the scene, the Avoyelles Parish Coroner, Dr. L.J. Mayeaux, and Detective Fred Mahfouz arrived to conduct the investigation of the scene of the shootings. They were aware of the defendant's version of how the shootings occurred. However, their investigation revealed physical findings inconsistent with defendant's story.
Defendant had gone to the home of his grandparents, after he called Clay, and while there he was given one of his grandmother's Butisol tablets, which was a mild tranquilizer. A blood test taken a few hours later revealed no drugs in the defendant's blood system.
Defendant and his brother, Clay, were asked to go to the sheriff's office, and they were taken in separate police cars. They arrived at the sheriff's office at approximately 10:15 p.m.
Defendant's first statement began at 12:36 a.m. and ended at 12:51 a.m. Present for the first statement were defendant's brother, Clay, Detective Kenneth Smith, Deputy McGlone and Deputy Charles Bryant, another friend of Clay Gachot. Defendant's first statement reiterated his version of the shootings.
Defendant was asked to give a second statement which began at 2:20 a.m. and ended at 2:25 a.m. This second statement was similar to his first statement. Detective Mahfouz and Dr. Mayeaux were present for this second statement as was defendant's brother, Clay, and Detective Smith. These same persons were also present when defendant gave his third statement wherein he confessed to the murders.
Although the police denied defendant was considered a suspect until he confessed to the murders, Detective Mahfouz and Dr. Mayeaux arrived at the sheriff's office knowing how the deaths actually occurred and that defendant's version of the shootings was doubtful. Defendant was never *274 told the particulars of the findings of the investigation, but Dr. Mayeaux had asked Clay Gachot to step outside, and then told Clay what he and Detective Mahfouz had discovered at the scene of the shooting.
It is the alleged statements made off the record between the second and the third statement which cause the greatest problem. Defendant claimed that Dr. Mayeaux told him after the second statement that if defendant did not tell the truth, the coroner would have to cut him up in court. Clay Gachot confirmed that Dr. Mayeaux said this. Dr. Mayeaux did not admit saying he would cut defendant up in court, but said he told defendant if he did not come forth and tell the truth, the coroner would have to testify in court about his contradictory findings, therefore it would be easier for defendant to tell the truth.
Another allegation by defendant is that he was told by Detective Smith that he had to tell the truth that evening or "tomorrow would be too late." Clay Gachot also confirmed the statement, but the detectives denied it.
One alleged statement which was confirmed by not only Clay Gachot but also Dr. Mayeaux and Detective Mahfouz was an appeal by Detective Smith to help defendant "like a father, not just as a friend." Detective Mahfouz testified this statement was made, but it was not made as an inducement. At trial, Dr. Mayeaux further testified that defendant was told by one of the detectives that they were on defendant's side.
This leads to the allegation that defendant was told by Detective Smith if he told the police what happened, they would get defendant help. Dr. Mayeaux testified that this offer of help was made but that he understood it to mean psychiatric counseling. Detective Mahfouz testified that defendant was told by Detective Smith if defendant told the truth, Detective Smith could help defendant and that it would help to tell the truth. However, Detective Mahfouz later testified that the offer of help came after defendant gave his confession.
Detective Smith denied everything which defendant, Clay Gachot, Detective Mahfouz and Dr. Mayeaux testified he said during the interrogation.
At the end of the hearing, the trial judge found defendant was not affected by the Butisol tablet he took before the interrogations, and that the statements made by the defendant were admissible.
Before trial, defendant again moved to suppress his statements based upon the additional ground of non-compliance with Dino. This motion was denied.
Before addressing the merits of defendant's claims, a procedural question must be resolved. Defendant raises a procedural issue concerning suppression of the statements. As held by Dino, the state must affirmatively establish the satisfaction of the three prerequisites before a statement by a juvenile can be admitted. At the first suppression hearing, the state did not specifically address compliance with Dino, however the defendant did not object to the trial court's ruling nor did defendant call attention to non-compliance with Dino.
Defendant was not prejudiced by the failure of the state to specifically address compliance with Dino because the evidence necessary to establish the three prerequisites was admitted at the first hearing, and the only omission was that no one specifically addressed this issue until immediately prior to trial. The second hearing consisted of arguments of counsel and no testimony. Therefore, this procedural irregularity presents no error prejudicial to defendant.
The requirement of Dino which defendant contends were not met was that defendant was not given a meaningful consultation with an adult concerned with his welfare.
This court has held that a private consultation is not a prerequisite to compliance with Dino. State v. Carter, 569 So.2d 1025 (La.App. 3 Cir.1990), citing State v. Johnson, 508 So.2d 953 (La.App. 4 Cir.1987). Therefore, the failure of the police to allow defendant to privately consult with his brother, Clay, should not result in suppression of defendant's statements.
*275 Another requirement of Dino is that the juvenile consult with an attorney or an adult interested in his welfare. Defendant contends the state failed to establish Clay Gachot met this requirement.
In State v. Braud, 475 So.2d 29, 32 (La. App. 4 Cir.1985), a filial relationship between the juvenile defendant and the adult was considered sufficient to prove the adult is concerned with the welfare of the juvenile. Additionally confirming this interest in Braud was the father's presence at the police station, his conversations with his son, and his apparent desire to help his son. Further, the fact that the adult may be a brother or sister as young as 21 years old will meet the requirements of Dino. State v. Carter, supra; State v. Stevenson, 447 So.2d 1125, 1131 (La.App. 1 Cir. 1984).
Therefore, it appears that the state did establish compliance with the requirements of Dino.
Turning to the issue of coercion, promises, or inducements made to defendant to obtain his confession, the rule in Louisiana is summarized as follows:
Confessions obtained by any direct or implied promises or by the exertion of improper influence are involuntary and inadmissible as a matter of constitutional law. Hutto v. Ross, 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). In Louisiana the statutorily mandated test for voluntariness is whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. The state has the burden of affirmatively proving beyond a reasonable doubt that a confession was free and voluntary. State v. Landry, 502 So.2d 281 (La.App. 3 Cir. 1987), writ denied, 508 So.2d 63 (La. 1987).
Whenever the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the State to rebut these allegations specifically. State v. Davis, 380 So.2d 607, 610 (La.1980). To do this "... it [is] incumbent upon the State to call other witnesses to corroborate the testimony of the deputy who took the confession and to rebut defendant's own testimony with reference to his mistreatment. The State [should call] for this purpose some or all of the ... other officers who were with the deputy and the prisoner ...". State v. Honeycutt, 216 La. 610, 616, 44 So.2d 313, 315 (1950).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusion on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless it is not supported by the evidence. State v. Jackson, 381 So.2d 485 (La.1980). State v. Howard, 505 So.2d 228 (La.App. 3 Cir. 1987).
State v. Murray, 546 So.2d 944, 947 (La. App. 3 Cir.1989).
A mild exhortation to tell the truth, or telling a defendant that if he cooperates that "things will go easier" will not negate the voluntariness of a confession. State v. Jackson, 523 So.2d 251, 259 (La.App. 2 Cir.1988); State v. Cupit, 508 So.2d 996, 1005 (La.App. 2 Cir. 1987). If it does not appear that the statements of the police were designed to overcome the defendant's will or to produce a coerced confession, then the statement is admissible. State v. Murray, supra.
In the present case, Dr. Mayeaux, Detective Mahfouz and Clay Gachot testified that defendant was treated courteously and the atmosphere did not appear to be coercive or threatening. (R. pp. 149, 185, 221-222). To all present, defendant appeared to be acting voluntarily when he gave his statements. Defendant and his brother signed waiver of rights forms acknowledging they understood their rights and waived them. In light of the above-cited jurisprudence, it does not appear that any statement made to defendant invalidated his waiver of rights or negated the voluntariness of his actions.
Therefore, the trial court did not err in denying defendant's motion to suppress.

*276 ASSIGNMENTS OF ERROR NOS. 3-6, 12 AND 17:
Defendant briefed and argued assignments of error numbers 3 through 6, and 17 together and briefed assignment of error number 12 separately although all six assignments of error concern the trial court's rulings not admitting evidence concerning defendant's relationship with his mother.
Defendant cites as support for his argument La.C.E. art. 404 A(2) which provides:
Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible; or
Evidence was admitted which concerned defendant's problems with his father, and specific acts or accusations by the father. Defendant argues that this evidence established sufficient provocation to reduce the degree of homicide of the father to manslaughter, and if the trial court had admitted similar evidence concerning the mother a consistent verdict of manslaughter of the mother would have been returned.
The theory of defense was that Michael Gachot committed the crimes of manslaughter of his parents as a result of long-term mental abuse. (R.p.423).
As this court noted in State v. Nugent, 580 So.2d 1002, 1004 (La.App. 3 Cir. 1991), manslaughter is a homicide which would be second degree murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Id., quoting State v. Lombard, 486 So.2d 106 (La.1986).
The important factor to note is the issue of time. The provocation discussed in the manslaughter statute must occur immediately before the offense. In the present case, some of the utterances and actions by defendant's father which defendant claims were sufficient provocation did not occur shortly before the murders, but weeks and months earlier. Defendant's blood had an opportunity to cool. Therefore, these prior incidents should not have been admitted to prove the provocation sufficient to reduce defendant's culpability from second-degree murder to manslaughter. Defendant did not establish any verbal or emotional abuse by his mother, nor did he make a proffer of such evidence.
Defendant should not have been permitted to present evidence concerning his mental abuse in the absence of a plea of "not guilty and not guilty by reason of insanity." It is well established that a mental defect or disorder short of insanity will not serve to negate specific intent or reduce the degree of a crime. State v. Leatherwood, 411 So.2d 29 (La. 1982). According to La.C.Cr.P. art. 651, evidence of a mental condition or defect is inadmissible when the defendant fails to plead not guilty and not guilty by reason of insanity. State v. Lecompte, 371 So.2d 239 (La.1978); State v. Johnson, 475 So.2d 394 (La.App. 1 Cir.1985).
Therefore, there was no error in the trial court's rulings.

ASSIGNMENT OF ERROR NO. 7:
By this assignment of error defendant attacks the sufficiency of the evidence to convict him on the two counts.
*277 Defendant argues that his conviction was based upon his statements to the police and since those statements are inadmissible, there is insufficient evidence to support either conviction. Because we have found the statements admissible this assignment is without merit.

ASSIGNMENT OF ERROR NO. 8:
By assignment of error number 8, assuming that the evidence presented was sufficient to convict defendant of manslaughter of his father, defendant argues the second-degree murder conviction for killing his mother is illegal because no evidence was presented to show that immediately after defendant shot his father he regained his self control and cool reflection before he shot his mother. The state's evidence established that defendant shot his father first and then shot his mother. The third shot received by Mrs. Gachot was a contact, or point-blank, shot to her head after she had fallen to the floor from the first two shots. It is difficult to believe defendant did not act with specific intent to kill when he fired the third shot directly into his mother's head.
Although the problem of inconsistent verdicts against a defendant tried for multiple counts of homicide has not been addressed in any reported Louisiana case, inconsistent verdicts as to codefendant's or a defendant charged with other multiple counts are not unusual. In the latest case coming from the Louisiana Supreme Court addressing the issue of inconsistent verdicts, State v. Irvine, 535 So.2d 365 (La. 1988), the court was faced with the issue whether the acquittal of one of two jointly tried principals to an alleged burglary mandated reversal of the other principal's conviction. The court, citing United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), concluded:
We conclude that a court, reviewing the sufficiency of the evidence in a joint trial of two alleged principals in which one was convicted and one was acquitted, generally should not be concerned with possible inconsistencies in the verdict, as long as the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant was guilty of every element of the crime of which he was convicted.
In the Powell opinion, the United States Supreme Court noted that inconsistencies in verdicts may possibly be the product of mistake, compromise or leniency on the part of the jury. United States v. Powell, 469 U.S. at 65, 105 S.Ct. at 476, 83 L.Ed.2d 461. That a verdict of guilty to manslaughter, a lesser responsive crime, may be the result of a compromise between a verdict of guilty of second degree murder and not guilty does not render the manslaughter conviction reversible. In State v. Prince, 520 So.2d 778, 784-785 (La.App. 3 Cir.1987), writ denied, 522 So.2d 567 (La. 1988), a defendant's conviction for manslaughter was upheld even though there was no evidence in the record of sudden passion, heat of blood, or any provocation by the victim.
Defendant's argument that the second-degree murder verdict should be reversed is based upon the assumption that the manslaughter verdict is correct. However, the evidence presented supports the second-degree murder conviction. The most that can be said of the manslaughter conviction is that the jury compromised on the verdict probably resulting from the evidence of verbal and emotional abuse of defendant by defendant's father.

ASSIGNMENTS OF ERROR NOS. 10 AND 11:
These assignments of error will be combined since they both concern the excessiveness of defendant's sentence. By assignment of error number 10 defendant claims his sentence for manslaughter, twenty-one (21) years at hard labor, is excessive. By assignment of error number 11, defendant contends that the trial court erred in ordering the manslaughter sentence be served consecutive to the second degree murder sentence.
In regard to defendant's assignments of error, La.C.Cr.P. art. 881.1 provides in full:
A. (1) Within thirty days following the imposition of sentence or within such *278 longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
C. The trial court may deny a motion to reconsider sentence without a contradictory hearing.
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. (Emphasis added).
A review of the record reveals that no motion to reconsider defendant's sentence was filed. The defense counsel merely objected to the sentence at the sentencing hearing. Thus, the defendant is precluded from raising the claim of excessiveness of appeal.

ASSIGNMENTS OF ERROR NOS. 13, 14, 15 AND 16:
Defendant combined the argument on these four assignments of error.
Defendant argues that he has been denied the right to present fully his case. Defendant attempted to present evidence of a "diminished capacity" of a fifteen year old to the jury via the testimony of Dr. Stuart Kutz, a psychologist. Defendant contends La.C.E. art. 404 A(2) now codifies and recognizes the "battered child" defense and further argues the provisions of 404 A(2) should not be restricted to cases of self-defense. In Pugh, G.; Force, R.; Rault, L.; and Triche, K.; Handbook on Louisiana Evidence Law, (1991 ed.), the author's notes discussed the change in law provided by 404 A(2), but the changes apply only to defendants in criminal cases who plead self-defense. (Id., p. 238).
As was fully discussed in defendant's assignments of error 3, 4, 5, 6, 7 and 8, without a plea of "not guilty and not guilty by reason of insanity," defendant could not introduce evidence of a mental defect or condition to negate specific intent to kill or reduce the degree of the crime. State v. Leatherwood, 411 So.2d 29 (La. 1982). If counsel for defendant had wanted to introduce the psychological evidence of defendant's emotional differences from that of a reasonable adult male, then counsel should have had defendant enter a different plea.
Therefore, these assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 9 AND 18:
The defendant did not brief these assignment and they are deemed abandoned.
DEFENDANT'S CONVICTIONS AND SENTENCES ARE AFFIRMED.
NOTES
[*] William A. Culpepper, retired, and Kaliste J. Saloom, Jr. participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.