# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## NO. 04-0592


**STATE OF LOUISIANA**

**VERSUS**

**KEVIN TREMAINE FRANK**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF VERMILION, NO. 39946
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and Billy H. Ezell, Judges.

**REVERSED AND REMANDED.**

**Bart J. Bellaire**
**Assistant District Attorney**
**Fifteenth Judicial District**
**Post Office Box 175**
**Abbeville, LA 70511-0175**
**(337) 898-4320**
**COUNSEL FOR:**
    **STATE OF LOUISIANA**

**Patricia A. Thomas**
**Attorney at Law**
**Post Office Box 142**
**205 Charity Street**
**Abbeville, LA 70511-0142**
**(337) 893-6082**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Kevin Tremaine Frank**

PETERS, J.

The defendant, Kevin Tremaine Frank, pled guilty to possession of cocaine with intent to distribute, a violation of La.R.S. 40:967(A)(1). However, in doing so, he reserved his right, pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976), to appeal the trial court rulings on pretrial motions. After the trial court sentenced the defendant, he appealed his conviction, asserting that the trial court erred in refusing to grant his motion to suppress the seized cocaine which formed the basis of his prosecution. For the following reasons, we reverse the defendant's conviction and remand the matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

On the afternoon of September 16, 2002, law enforcement officers of the Abbeville City Police Department stopped a vehicle occupied by the defendant and two other men. The defendant fled the scene on foot and, after a short chase, was apprehended. In retracing the defendant's flight path, the pursuing officers found and seized a medicine bottle containing cocaine. They then arrested the defendant and charged him with possession of cocaine with intent to distribute. Law enforcement officers later conducted another search of the area where they had originally found the cocaine and, in doing so, discovered and seized a small amount of marijuana. The officers then charged the defendant with the additional offense of possession of marijuana, a violation of La.R.S. 40:966(E).

On March 14, 2003, the state filed two separate bills of information against the defendant—one for possession of marijuana, and the other for possession of cocaine with intent to distribute. The defendant then filed a motion to suppress the cocaine and marijuana, which the trial court rejected after a November 19, 2003 hearing. Thereafter, on December 19, 2003, the defendant entered a plea of *nolo contendere*

to the distribution charge, reserving his *Crosby* rights. In exchange for the plea, the state dismissed the marijuana charge. In his one assignment of error, the defendant asserts that the state seized the cocaine in an illegal search and seizure.

The state presented the testimony of four witnesses at the hearing on the motion to suppress: Abbeville Police Department Lieutenant Steve Broussard, Detective Rick Coleman, and Officer Toby Walker; and Jeremiah Bolden, an employee of the Abbeville City Marshall's Office. The trial court concluded, after hearing this testimony, that the initial stop of the vehicle containing the defendant constituted a valid investigative stop, and the defendant's actions thereafter gave the investigative officers sufficient probable cause to pursue the defendant.

Lieutenant Broussard testified that on September 16, 2002, he received an anonymous telephone complaint that the defendant was "selling dope" in an area of the city known as "The Front." After receiving the complaint, Lieutenant Broussard traveled to the location only to find that the defendant was not present. He then "put the information over on the radio that [the defendant] was *possibly* in possession of cocaine and that we wanted to stop and talk to him." (Emphasis added). According to Lieutenant Broussard, Detective Coleman and Officer Walker acted on this transmission and stopped an automobile containing the defendant and two other men after it left a local trade school. He recalled that the two officers became aware the defendant was in the vehicle through a communication with Mr. Bolden, who had been monitoring the police transmissions with a scanner and heard Lieutenant Broussard's radio transmission. Lieutenant Broussard arrived at the scene of the traffic stop in time to see the defendant being returned to the vehicle in handcuffs.

Mr. Bolden remembered little of the events of September 16, 2002. While he

2

recalled overhearing Lieutenant Broussard's transmission, he did not recall looking for the vehicle containing the defendant or coming in contact with him, and he played no part in the defendant's apprehension.

Detective Coleman could not remember exactly how he became involved in the stop of the vehicle containing the defendant. He only recalled that he had already been involved in an undercover narcotics investigation that afternoon, and had been "shadowing the vehicle [occupied by the defendant] for some time." He did not recall any communication from Lieutenant Broussard, but could give no explanation as to why he chose this particular vehicle to shadow. He testified that he first contacted the vehicle before it reached the trade school, and not at the trade school as suggested by Lieutenant Broussard. Detective Coleman observed the defendant and two men exit the vehicle at the trade school, enter and exit the trade school, reenter the vehicle, and drive away. At some point after the vehicle left the trade school, and on the radioed instruction of Lieutenant Broussard, Detective Coleman participated in stopping the vehicle. However, because his vehicle bore no police markings, he allowed a marked patrol unit to stop the vehicle.

According to Detective Coleman, when the vehicle stopped, the defendant exited the vehicle and immediately ran from the scene. Officer Walker began pursuit on foot and Detective Coleman drove around the block in an attempt to intercept the defendant. At one point during the pursuit, the defendant disappeared behind a garage, and, after apprehending the defendant, Detective Coleman walked behind the garage and found the medicine bottle containing the cocaine. He testified that he and Officer Walker returned to the scene twenty-five to forty minutes later, searched the same area, and recovered a small amount of marijuana. However, during that twenty-

3

five to forty minutes, the officers left the crime scene unsecured.

Officer Walker accompanied Detective Coleman on the afternoon of September 16, 2002. According to Officer Walker, the pursuit of the defendant occurred, not as part of an ongoing investigation as suggested by Detective Coleman, but as a direct result of the anonymous telephone tip received by Lieutenant Broussard. He testified that he and Detective Coleman first traveled to "The Front" specifically looking for the defendant, but could not find him. They knew who they were looking for and had been provided with a picture of the defendant when they left the police station.

According to Officer Walker, he and Detective Coleman did not follow the vehicle containing the defendant to the trade school as suggested by Detective Coleman, but first encountered it when it pulled into the trade school. Officer Walker testified that they began looking for this specific vehicle after Mr. Bolden telephoned Lieutenant Broussard and informed the lieutenant that he had seen the defendant in the vehicle with two other men.

Officer Walker observed the same activity at the trade school as did Detective Coleman. However, Officer Walker made it clear that the defendant had already become the subject of the investigation as the defendant was "the only one [Officer Walker] was trying to pay attention to, watch him and see what he was doing - - any particular thing, how he was acting, stuff like that." Officer Walker testified that the order to stop the vehicle came from Detective Coleman, not Lieutenant Broussard.

During his pursuit of the defendant on foot, Officer Walker lost sight of him only when he ran behind the same garage where Detective Coleman lost visual contact. When he and Detective Coleman returned to the scene after the defendant was transported to the police station, they found the marijuana within two feet of

4

where Detective Coleman found the cocaine.

The following exchange occurred when Officer Walker was asked to explain the probable cause for the traffic stop:

DEFENSE COUNSEL: What was the probable cause for the traffic stop?

. . . .

OFFICER WALKER: My stop would have been an investigatory stop, a narcotics stop.

DEFENSE COUNSEL: What is the authority for a narcotics stop, Officer? I've heard this and I really don't know.

OFFICER WALKER: From his confidential informant. One, you would receive information from a confidential informant. That gives you enough probable cause to go and investigate.

DEFENSE COUNSEL: All right. And in this case, you have - - did not have a confidential informant; did you?

OFFICER WALKER: Lieutenant Broussard received a phone call from a confidential informant, from my knowledge stating that the subject had narcotics.

In his sole assignment of error, the defendant asserts that the trial court erred in denying his motion to exclude the seized cocaine. He argues that the cocaine was seized as a result of an unconstitutional arrest, unsupported by reasonable suspicion or probable cause.

**OPINION**

In a suppression hearing, the state has the burden of proving the admissibility of all evidence seized without a warrant. La.Code Crim.P. art. 703(D). Additionally, this court's holding in *State v. Bargeman*, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-0033 (La. 5/28/99), 743 So.2d 658, sets forth the

5

scope of review of the trial court's ruling on a motion as follows:

> When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. *State v. Burkhalter*, 428 So.2d 449 (La.1983), and *State v. Gaspard*, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213. The admissibility of evidence seized without a warrant is a question for the trial court. Its conclusions on credibility and the weight of testimony regarding the voluntariness of a consent for admissibility purposes will not be overturned on appeal, unless the conclusions are unsupported by the evidence. *State v. Gachot*, 609 So.2d 269 (La.App. 3 Cir.1992), *writ denied*, 617 So.2d 1180 (La.1993), *cert. denied*, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993).

Thus, we must review the totality of the evidence presented to determine whether the trial court's conclusions were supported by the record. The pivotal question to be decided herein is whether the initial stop of the vehicle occupied by the defendant was a legal stop.

United States Constitution Amendment IV and La.Const. art. I, § 5 protect individuals from unreasonable searches and seizures at the hands of law enforcement officers.

> An illegal detention of a person is considered an unreasonable seizure. It is well settled that a seizure and search conducted without a warrant issued upon probable cause is *per se* unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement.

*State v. Lewis*, 97-1244, p. 8 (La.App. 3 Cir. 3/6/98), 728 So.2d 1, 5, *writ denied*, 98-0977 (La. 9/18/98), 724 So.2d 752.

One of the narrowly drawn exceptions is the automobile exception recognized in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280 (1925), and expanded upon in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157 (1982). This exception "has developed because of the time problems associated with obtaining a search warrant

6

and the mobility of automobiles." *State v. Washington*, 96-658, p. 8 (La.App. 3 Cir. 1/15/97), 687 So.2d 575, 580. However, a law enforcement officer seeking to assert the automobile exception must establish that exigent circumstances and probable cause existed for the warrantless stop and search. *Id.* In *Ross*, 456 U.S. at 808-09, 102 S.Ct. at 2164-65, the Supreme Court stated that "[i]n this class of cases, a search is not unreasonable *if based on facts that would justify the issuance of a warrant*, even though a warrant has not actually been obtained." (Emphasis added) (footnote omitted).

We find that the record does not establish probable cause for the vehicle stop. At best, and without considering the many internal inconsistencies in the investigating officers' testimony, the record establishes that the investigating officers stopped the vehicle occupied by the defendant on the basis of an anonymous tip that the defendant was distributing drugs at a specific location in the city. The officers pursued this tip and were unable to locate the defendant at that location. Thus, one can only speculate whether the tip was inaccurate or the defendant left the scene before the officers' arrival.

Thereafter, Detective Coleman and Officer Walker began to observe the defendant at the trade school (or perhaps sooner if Detective Coleman's recollection is correct) and followed him until they received instructions to stop the car he occupied. The record contains no evidence of the distance between "The Front" and the trade school, or between the trade school and the point where the officers stopped the vehicle. However, it is clear that from the time Detective Coleman and Officer Walker came into contact with the defendant until the vehicle he occupied was stopped, they did not observe him do anything illegal, or even suspicious. Based on

7

the information available to them, the officers could not have obtained a search warrant. Therefore, they could not avail themselves of the automobile exception to the warrant requirement.

The state asserts that, not withstanding the lack of probable cause, they had sufficient reasonable suspicion to avail themselves of the provisions of La.Code Crim.P. art. 215.1(A). The supreme court considered this argument in *State v. Sims*, 02-2208, pp. 4-5, (La. 6/27/03), 851 So.2d 1039, 1043, and stated the following:

> While an arrest requires officers to have probable cause to believe that a suspect has committed a crime, *see* U.S. Const. amend. IV and La. Const. art. I, § 5, an investigatory stop requires a lesser standard of "reasonable suspicion." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Louisiana, the investigatory "*Terry*" stop is codified in La. Code Crim. Proc. Art. 215.1(A): "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Like an arrest, an investigatory stop entails a complete restriction of movement, although for a shorter period of time. *State v. Bailey*, 410 So.2d 1123, 1125 (La.1982).
>
> In making a brief investigatory stop, the police "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Kalie*, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Specifically, our courts have interpreted article 215.1 to require that an officer point to specific and articulable facts to justify an investigatory stop. *State v. Huntley*, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049.

Just as the facts available to the investigating officers did not rise to the level of probable cause, they also do not establish a particularized or objective basis for suspecting the defendant of criminal activity. The assertions of an anonymous source, without more, are not sufficient to reasonably establish that someone traveling down the highway has been, is, or is about to be engaged in criminal conduct. At best, they had a generalized suspicion based on unsubstantiated information.

The action of the officers in stopping the vehicle occupied by the defendant without reasonable suspicion rendered unlawful any resultant seizure of the abandoned cocaine. *See State v. Belton*, 441 So.2d 1195 (La.1983).

## DISPOSITION

For the foregoing reasons, we set aside the defendant's conviction and sentence, and remand the matter to the trial court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**